868 P.2d 496

**Richard Jay SOHN, Plaintiff–Appellant,**

v.

**Howard R. FOLEY, Defendant–Respondent.**

**No. 20550.**

Court of Appeals of Idaho.

Jan. 3, 1994.

Petition for Review Denied March 9, 1994.

Ellis, Brown & Sheils, Boise, for appellant. Allen B. Ellis argued.

Eberle, Berlin, Kading, Turnbow & McKlveen, Boise, for respondent. Mark S. Geston argued.

PERRY, Judge.

Richard J. Sohn (Richard) filed an action against his former divorce attorney, Howard Foley (Foley), alleging that Foley negligently advised him during property settlement negotiations. The district court granted summary judgment to Foley, finding that the parties were *in pari delicto* and that the damages requested, which were based on a hypothetical trial of Sohn v. Sohn, were too speculative. The district court ruled, therefore, that if the action against Foley were to go to trial, the damages were limited to the economic losses directly attributable to the loss of an insurance policy of which Richard contends he would have obtained ownership, but for Foley's malpractice. Richard appeals the granting of the summary judgment. We reverse the judgment entered by the district court.

## FACTS AND PROCEDURE

Richard and Margaret (Margaret) Sohn were married in 1962. During their marriage, Richard and Margaret had acquired various assets and liabilities, including a

$300,000 indebtedness to the Internal Revenue Service. During the marriage, United Airlines (UAL), Richard's employer, began paying the premiums on a life insurance policy for Richard. In 1984, Richard assigned the policy to Margaret.

The Sohn's marriage had been deteriorating for years, and the two had discussed divorce and settlement of their property as early as 1989. The Sohns had preliminarily decided how most of their property would be divided upon their divorce. During the course of these settlement discussions, Richard corresponded frequently with Margaret, who had moved to Florida. A letter written on June 18, 1990, sent by fax, indicates that Richard had already made a comprehensive offer. It also indicated that he wished to accomplish the divorce "as quickly and cleanly as possible."

Richard again wrote Margaret on June 20, 1990. In this letter he explained his plan for distribution of the assets and liabilities and his belief it would be wiser for Margaret to accept his proposal rather than endure a trial. Richard also observed that a settlement would be better because "if we go to court I will have to list all assets to get my fair share and the IRS settlement is a liability and it will almost certainly be verified directly with the IRS. This will have an effect that neither of us will appreciate." The letter proposed that Richard would take the $300,000 tax liability plus a down payment on a house while Margaret would get the remaining assets.

Richard first met with attorney Foley on July 5, 1990. During this meeting, Richard provided Foley with a copy of the 1984 assignment of the UAL life insurance policy, informing Foley that Margaret owned the policy. Richard claims that he also told Foley that he strongly desired to get the policy back and that if he could not, he would not accept a negotiated settlement and would go to trial. According to Richard, Foley told him that it did not matter what Margaret actually agreed to, as Richard would regain ownership of the UAL policy after the divorce by operation of the "insurable interest" doctrine. Richard and Foley agreed that the policy would not be mentioned to Margaret

as a matter of strategy. Richard contends, however, that the final language of the property settlement agreement was to award him the policy.

Following the meeting with Foley, Richard wrote to Margaret on a number of occasions, but did not mention the policy. Finally, in response to a letter from Margaret stating that she believed she owned the insurance policy, Richard stated in a letter on July 22, 1990, "The insurance policy is as you interpreted it. You own it and you control it, no matter how obscene it is to hold a life insurance policy on someone else's husband ... Don't bother to respond on this issue, there is nothing you could say to make you look righteous."

Richard and Margaret finally agreed on the wording of the settlement agreement drafted by Foley, which did not specifically mention the UAL policy. The agreement did, however, state:

The following community assets and property are hereby awarded to husband free of any and all claims by wife as his sole, separate and absolute property:

.    .    .    .    .

5. All United Airline retirement benefits and programs accruing to the Plaintiff prior to September 7, 1962 and likewise all such benefits following the entry of the Decree of Divorce herein.

Following the entry of the decree, Richard tried to recover the policy. UAL, however, refused to recognize that the settlement agreement set aside the 1984 assignment. Richard, through Foley, filed a post-divorce motion under I.R.C.P. 60(b), arguing that the provision set forth above established that he owned the policy. This motion was denied. Foley then filed, on behalf of Richard, an independent action against Margaret and UAL to get the policy returned to Richard. This suit, however, is not being presently prosecuted.

Following Richard's unsuccessful attempts to get the policy back, he filed this malpractice action against Foley. Richard alleged that Foley's advice regarding the insurable interest doctrine and his drafting of the provision in the property settlement agreement

were negligent. The district court granted summary judgment to Foley on the grounds that Richard and Foley were *in pari delicto* and that no reasonable jury could render Richard relief on his cause of action. The district court also found that if the claim against Foley were to go to trial, the measure of damages would be limited to economic losses directly attributable to, or connected with, the life insurance policy. Richard now appeals, claiming that the district court erred when it granted Foley's motion for summary judgment. For the reasons set forth below, we agree and therefore reverse the ruling of the district court.

## ANALYSIS

### A. *Standard of Review*

We first note that summary judgment under I.R.C.P. 56(c) is only proper when there is no genuine issue of material fact, and the moving party is entitled to a judgment as a matter of law. On appeal, we exercise free review in determining whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *Edwards v. Conchemco, Inc.*, 111 Idaho 851, 852, 727 P.2d 1279, 1280 (Ct.App.1986).

When ruling on a motion for summary judgment, it is not within the trial court's province to assess the credibility of an affiant or deponent when credibility can be tested in court before a trier of fact. *Lowry v. Ireland Bank*, 116 Idaho 708, 711, 779 P.2d 22, 25 (Ct.App.1989). When assessing the motion for summary judgment, all controverted facts are to be liberally construed in favor of the non-moving party. Furthermore, the trial court must make all reasonable inferences in favor of the party resisting the motion. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 517, 808 P.2d 851, 854 (1991).

### B. *In Pari Delicto*

The district court granted Foley's summary judgment motion, finding that the parties were *in pari delicto* and that, based on the undisputed facts before the district court, no reasonable jury could grant Richard relief upon his cause of action. The district court incorporated into the written order the oral rulings made from the bench following the hearing on the motion. In that oral ruling the district court found that:

> In my view, what is unmistakably clear is Mr. Sohn was representing that his wife was going to get and keep this insurance policy. Or going to get to keep it. I guess she already had it. And that that is inconsistent with his contention now that he and Mr. Foley, through Mr. Foley's advice, were conspiring to deprive her of that item. I think that I can find that as an absolute matter of law, based upon the uncontested documents that are in the file and that have been submitted in terms of the correspondence and communications between Mr. Sohn and Mrs. Sohn.

The district court found the parties *in pari delicto* by virtue of a "scheme" to defraud Margaret out of the policy. Although the defense of *in pari delicto* has been accepted in Idaho in various contexts, *see Wilson v. Nielson*, 75 Idaho 145, 269 P.2d 762 (1954), and has been successfully used as a defense to an attorney malpractice claim in other jurisdictions, *see, e.g., Pantely v. Garris, Garris & Garris, P.C.*, 180 Mich.App. 768, 447 N.W.2d 864 (1989), we hold that it was improperly applied in the context of a summary judgment in this case.

In Richard's complaint against Foley, as well as throughout his deposition, Richard maintains that he believed the final property settlement agreement drafted by Foley would conclusively require the return of the policy to Richard, and that the document would make that transfer clear to Margaret. He asserts that, to his knowledge, the agreement adequately and properly provided for the return of the policy. Therefore, his pre-agreement posturing did not constitute fraud. In response, Foley contends that Richard understood the document and that the two omitted the policy from the settlement agreement because they felt it would be returned to Richard as a matter of law. Foley maintains that Richard intentionally misrepresented to Margaret what Richard believed to be the law, hoping to induce Margaret to sign

the agreement and then regaining the policy in spite of the agreement.

The district court's determination, then, was essentially an assessment of the parties' credibility. It is not the district court's province to consider credibility when making a summary judgment determination. *Lowry, supra.* There remains a genuine question of material fact as to Richard's intent during the process of negotiations. If the trier of fact finds that it was Richard's intent to deprive his wife of the policy by misrepresentations and fraud, then the doctrine of *in pari delicto* may apply. If, on the other hand, the trier of fact finds that Richard's intent was merely to wait until the final draft of the agreement was presented to Margaret to bring up reassignment of the policy, then the doctrine would not apply.

It is not the place of the trial judge to assess the credibility of the parties and then to rule based on that determination. The trier of fact should ultimately make the credibility determination taking into account all the evidence, including the various letters sent by Richard to Margaret. Therefore, it was error for the district court to grant the summary judgment based on the doctrine of *in pari delicto.*

### C. *Summary Judgment on Damages*

■ As part of the summary judgment order, the district court also found that, "It is determined that Plaintiff's damages, if any, shall be limited to those economic losses directly attributable to or connected with the term life insurance policy in controversy herein." In its oral ruling on the motion, the district court stated:

On the partial summary judgment on the question of damage I'm satisfied that a relitigation of Sohn versus Sohn is not the measure of damage that should be attributable in this case. I think it would be completely speculative, as a matter of law, to attempt to try to figure out what might have been the result had a settlement not been reached and had the matter gone to trial. I agree with the case cited by the defendant that this is just beyond the realm of what the law would countenance as proof of damage in a tort lawsuit.

I would further observe that in my view, the plaintiff's contention in this area is fundamentally not credible as a matter of law and that no jury would accept the contention that if he did not get his way on this insurance that he'd—that it was a deal breaker and that he'd go to litigation wherever he might have to go to litigation, whether in Idaho, or Florida, or Costa Rica, or wherever.

Again, as noted above, the credibility of the parties is not a proper consideration when deciding a motion for summary judgment. The district court found it unlikely, in its view, that Richard would have actually proceeded to trial had he thought he would not get the insurance policy. Although this may seem unlikely, it is nonetheless a question for the trier of fact at trial. What Richard might have done had Foley correctly advised him about the insurable interest doctrine or had Foley properly drafted the settlement agreement are questions of fact. Thus, at trial, the question of whether Richard would actually have proceeded to trial in the divorce case if Margaret refused to transfer the policy as a term of settlement is a question for the jury. If the jury responds affirmatively, it will then be necessary to determine the measure of damages, based on what Sohn should have recovered upon a trial in the divorce proceedings.

■ In a legal malpractice case based upon negligence in handling litigation for a claimant, the measure of direct damages is the difference between the client's actual recovery and the recovery which should have been obtained but for the attorney's malpractice. *See,* 1 RONALD E. MALLEN and JEFFREY M. SMITH, LEGAL MALPRACTICE § 16.1 at 890 (3d ed. 1989); *Chocktoot v. Smith,* 280 Or. 567, 571 P.2d 1255 (1977); *Pickett, Houlon & Berman v. Haislip,* 73 Md.App. 89, 533 A.2d 287 (1987). Thus, the trier of fact in the malpractice action must decide what the outcome would have been in the previous case if the lawyer had performed properly, a process that has been described as a "suit within a suit." *Chocktoot,* 571 P.2d at 1257. While presenting evidence of such damages in the present

case may be difficult and complex, this measure of recovery is not inherently speculative so as to render the claimed damages unrecoverable as a matter of law. At trial, Richard will bear the burden of proving the existence and amount of such damages with reasonable certainty. *Fuller v. Wolters,* 119 Idaho 415, 422, 807 P.2d 633, 640 (1991); *Moeller v. Harshbarger,* 118 Idaho 92, 93, 794 P.2d 1148, 1149 (Ct.App.1990); *Eliopulos v. Kondo Farms, Inc.,* 102 Idaho 915, 919, 643 P.2d 1085, 1089, (Ct.App.1982). If he fails to meet this burden, recovery may be denied. It was improper, however, for the district court to grant partial summary judgment foreclosing any opportunity for such proof. Therefore, the district court also erred when it granted the motion for partial summary judgment limiting the damages to economic losses directly attributable to the life insurance policy.

## CONCLUSION

The district court erred in granting the summary judgment based on its determination that Richard's statements were not credible. The district court also erred when it granted the motion for summary judgment based on the speculative nature of the damages. We reverse the order granting summary judgment and remand this case for further proceedings consistent with this opinion.

WALTERS, C.J., and LANSING, J., concur.