934 P.2d 20

**William J. HINES, Plaintiff–Appellant– Cross–Respondent,**

v.

**Linda S. HINES, Defendant–Respondent– Cross–Appellant.**

No. 21857.

Supreme Court of Idaho.
Boise, December 1996 Term.

March 14, 1997.

Cosho, Humphrey, Greener & Welsh, Boise, and Moffatt, Thomas, Barrett, Rock & Fields, Chtd., Boise, for appellant. Kirk R. Helvie, argued.

Lynn, Scott, Hackney & Sullivan, Boise, for respondent. John L. Sullivan, argued.

TROUT, Chief Justice.

## I.

## BACKGROUND AND PRIOR PROCEEDINGS

Appellant William J. Hines (William) and Respondent Linda Hines (Linda) were married, although the marriage was of relatively short duration. During their marriage, they obtained financing to build a residential care facility for the elderly called Westwind and incorporated the business under the name Quali–Care. They agreed that Linda, who is a registered nurse, would serve as president and would run the facility, while William, who is an attorney, would serve as secretary-treasurer.

Shortly after construction of the facility began, William and Linda separated. As part of their property settlement agreement, Linda retained a fifty-one percent interest in the stock and continued to run the facility, receiving $2,000 per month for her services. The parties additionally agreed that William would retain a forty-nine percent interest in the stock, would be entitled to twenty-five percent of the corporation's profits, and would have nothing to do with the facility's day-to-day operations.

William and Linda's marital difficulties apparently affected the management of the corporation. As a result of their inability to work together in any way, in late 1991, they began discussing the possibility of one of them buying the other's stock. Each had various figures in mind regarding the value of their stock holdings, but the figures were miles apart. In April 1992, the corporation was in the process of filing its 1991 tax return, which showed a loss for the business's first year of operation. At that time, the parties had a telephone conversation during which Linda allegedly made three statements that are important for purposes of this appeal. First, she told William that the business was all debt. Second, she informed him that her bookkeeper recently had generated several financial statements that showed a $10,000 loss for March 1992. Finally, she informed William that the business was showing a loss every month.

William and Linda continued discussions and ultimately reached an agreement on May 4, 1992. The parties sat down in William's home and hand wrote an agreement whereby Linda agreed to pay William $30,000 for his interest in the business. Linda, however, needed an extension of time to close the deal, so William agreed to give her sixty days within which to pay him, provided she pay him an additional $5,000. She ultimately paid him $35,000 for his interest, and they divorced shortly thereafter in August 1992.

William subsequently filed suit against Linda, claiming that: (1) Linda failed or refused to pay William his twenty-five percent share of the corporation's profits and, thus, was in breach of contract; (2) Linda's representations that the corporation had not made a profit and that the corporation was losing money were fraudulent; and (3) Linda breached her fiduciary duty, as a majority shareholder, director, and president of the corporation, when she fraudulently misrepresented the corporation's economic well being. William, thus, contended that he was entitled to significantly more than $30,000 for his interest. Linda filed a motion for summary judgment, which the district court granted.

The court found that there was no genuine issue regarding William's fraud claim and, therefore, dismissed the other causes of action that William had filed.

Linda also filed a counterclaim that was not addressed by the summary judgment. The parties ultimately settled the counterclaim, with William agreeing to pay Linda $32,500. The district court found that, when Linda agreed to settle her counterclaim, she specifically retained any claim she might have for reimbursement of attorney's fees incurred in defense of William's original complaint. However, the district court concluded that the money paid in settlement of the counterclaim was essentially nothing more than reimbursement to Linda for the attorney's fees she incurred in defending William's action, as the attorney's fees were the only damages requested in her counterclaim. Thus, the district court determined that a portion of the $32,500 payment that William made to Linda in settlement of the counterclaim must be deducted from the district court's award of attorney's fees, as William already had paid that pro rata amount. Finding that William's action was frivolous, malicious, and without foundation, the district court awarded approximately $52,000 overall in attorney's fees but reduced that by $30,000. The amount of attorney's fees awarded, that is the $52,000, exceeded the amount that Linda had requested by way of attorney's fees by approximately $8,300. William appeals the granting of Linda's motion for summary judgment and the district court's award of attorney's fees. Linda appeals the district court's decision to deduct the amount paid in settlement of the counterclaim from the award of attorney's fees.

## II.

## DISCUSSION

### A. Standard of Review

Our review of a district court's ruling on a motion for summary judgment is the same as that required of the district court when ruling on the motion. *Friel v. Boise City Hous. Auth.*, 126 Idaho 484, 887 P.2d 29 (1994). Pursuant to I.R.C.P. 56(c), summary judgment must be entered when "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). As when the motion initially is considered by the district court, this Court, on review, liberally construes the record in the light most favorable to the party opposing the motion and draws all reasonable inferences and conclusions in that party's favor. *Farm Credit Bank of Spokane v. Stevenson*, 125 Idaho 270, 869 P.2d 1365 (1994). If we determine that reasonable people could reach different conclusions or draw conflicting inferences from the evidence, we will deny the motion. *Stevenson*, 125 Idaho at 272, 869 P.2d at 1367. However, if the evidence reveals no disputed issues of material fact, only a question of law remains, and this Court exercises free review. *Id.* at 272, 869 P.2d at 1367.

### B. Fiduciary Duty

William asserts that the district court erred when it determined that Linda did not owe William a fiduciary duty by reason of a special relationship between the two. William contends that he had no access to the corporation's records and that, although some records were turned over to him, he did not receive all of them. Therefore, he reasons, he was forced to rely on Linda's statements regarding the corporation's profits and losses and that Linda owed him a fiduciary duty to represent truthfully the corporation's economic standing. William further argues that Linda breached this duty by overstating the corporation's alleged losses in March 1992, failing to inform William of the corporation's alleged profits in April 1992, and undervaluing his stock.

We recognize the general rule that there is no fiduciary duty between shareholders or between an officer and a shareholder regarding non-corporate assets, such as an individual's private stock holdings. *See Stephan v. Hoops Constr. Co.*, 115 Idaho 894, 771 P.2d 912 (1989). However, our cases also demonstrate that a majority shareholder who is negotiating a purchase of a minority shareholder's stock owes a fiduciary duty to the

minority shareholder, if the parties are dealing on unequal terms. *See Weatherby v. Weatherby Lumber Co.,* 94 Idaho 504, 507, 492 P.2d 43, 46 (1972); *Fox v. Cosgriff,* 66 Idaho 371, 383, 159 P.2d 224, 228 (1945).

■ William's sworn statements in an affidavit indicate that he "was physically within the [Westwind facility] on only two occasions. Both occasions were brief. On neither occasion, was [he] allowed to see any of the books or records of the business." He also stated during a deposition that, prior to the sale of his stock, he requested in writing that all corporate records for 1991 and for January through May 1992 be delivered to him and that the corporation failed to comply with this request. He additionally stated in affidavits, as well as during a deposition, that, after the sale of his stock, the corporation failed to comply with his request for delivery of certain corporate financial documents relating to June 1992.

The relevant standard governing the corporation's responsibilities regarding shareholder access to corporate records and books is found in the Idaho Corporation Act, which provides that a corporation has a duty to allow its stockholders to examine corporate financial documents at reasonable times. *See* I.C. § 30–1–52. Drawing all inferences in favor of William, the nonmoving party, *see Bonz v. Sudweeks,* 119 Idaho 539, 808 P.2d 876 (1991), we have determined that the statements William made in his affidavit regarding his inability to examine corporate records while at the Westwind facility indicates that a material issue of fact exists regarding whether William and Linda dealt on equal terms. Moreover, we believe that this statement indicates that Linda may have breached her fiduciary duty to provide William with truthful information regarding the value of his stock and the fact that the corporation's April income statement reflected a positive income flow. Thus, we conclude that the district court erred when it determined that no genuine issue of material fact existed regarding William's allegations that Linda owed William a fiduciary duty and that she breached that duty. Consequently, we reverse the district court's grant of Linda's motion for summary judgment on William's breach of fiduciary duty claim.

■ We note that our decision is based solely on the statement contained in William's affidavit regarding the corporation's failure to provide him access to corporate records while on the corporation's premises. We are not inclined to say that a corporation is obligated to continue providing corporate records to a shareholder after the date the corporation supplied the specific records requested by the shareholder. Rather, the Idaho Corporation Act provides that, upon written request, a corporation must provide only its most recent financial statements. I.C. § 30–1–52. Because the record reflects that William's last written request was February 19, 1992 and the records he primarily complains of not receiving were financial documents for April 1992, the alleged failure of the corporation to provide William with April 1992 documents has no bearing on our decision that a material issue of fact exists. Furthermore, we note that William was not entitled to examine corporate books and records between the time at which he sold his stock and the time at which he filed this suit. *See* I.C. § 30–1–52. Thus, his allegations that the corporation failed to provide him with its records for June 1992 also has no bearing on our decision.

## C. Fraud

■ William also had attempted to establish a fraud claim based upon the three statements Linda made to him during the parties' April 1992 telephone conversation. The district court concluded that William, as a matter of law, had failed to establish a prima facie case for fraud, which requires a claimant to prove: (1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury. *Walker v. Nunnenkamp,* 84 Idaho 485, 373 P.2d 559 (1962). The district court specifically determined that William failed to prove the falsity of Linda's statements, the materiality of the statements, Linda's knowl-

that the statements were false, and William's reliance upon the statements.

With respect to Linda's statement that the business was all debt, we believe the district court was correct, as it is uncontroverted that this was a true statement and that William was aware of the truth of the statement when it was made. As to Linda's statement that the business showed a loss for the month of March, we also believe that it is uncontroverted that the statement was true. The March income statement generated by the corporation's bookkeeper showed that the corporation was showing a loss, and, by statute, Linda was entitled to rely on that document. *See* I.C. § 30–1–35.

Linda's statement to William that the business had been showing a loss all along, however, indicates that Linda had knowledge about the business and its finances and that she was relying on more than simply one document to conclude that the business was showing a loss every month. In other words, her statement indicates that she was making a representation not just that one record showed a loss but that indeed the business was losing money. Because we have concluded that a material issue fact exists regarding whether William was allowed access to the records that he was entitled to examine, a material issue of fact necessarily must exist regarding whether he was entitled to rely on Linda's statement regarding the condition of the business, as Linda was the majority shareholder. *See Weatherby*, 94 Idaho at 507, 492 P.2d at 46. If William was not allowed to examine the records, he was entitled to rely on Linda's statements, and the issue of whether William established the prima facie case for fraud then becomes whether the final statement she made was truthful.

We note at the outset that William claims that the district court erred because it imposed a heightened standard of proof by requiring him to prove his fraud claim by clear and convincing evidence. We agree. On at least two occasions in the written opinion, the district court stated that the burden on William was to prove fraud by clear and convincing evidence. This Court's opinions make it very clear that, for purposes of summary judgment, that is not the burden on the nonmoving party. *See Thomson v. Idaho Ins. Agency, Inc.*, 126 Idaho 527, 531, 887 P.2d 1034, 1038 (1994); *Tingley v. Harrison*, 125 Idaho 86, 89, 867 P.2d 960, 963 (1994); *Harris v. Idaho Dep't. of Health & Welfare*, 123 Idaho 295, 298, 847 P.2d 1156, 1159 (1992). It appears that the district court applied this higher standard in determining whether Linda's statements she made during the April 1992 telephone conversation were true, in analyzing whether William relied upon them, and in concluding that William had not controverted Linda's affidavit, in which she states that all three statements were true. We agree that, when the moving party establishes the absence of an element of the nonmoving party's case, the burden shifts to the nonmoving party. *See Badell v. Beeks*, 115 Idaho 101, 765 P.2d 126 (1988). However, to the extent the district court held William to a clear and convincing evidence standard after Linda established the absence of an element of William's fraud claim, the district court erred.

In an attempt to demonstrate that Linda's statements were not true, William's expert witness in accounting filed three affidavits and supporting financial calculations. The district court summarily struck the first affidavit, explained in a fair amount of detail his reasons for disregarding the second, and summarily disregarded the third as irrelevant and inconsistent with the second. We have determined that it was error for the district court to disregard at least the second affidavit and have concluded that the second affidavit presents a genuine issue of material fact that precludes the granting of summary judgment.

In the second affidavit, William's expert challenges the manner in which the corporation was showing its profits and losses. He particularly focuses on the characterization of certain of Linda's personal expenses as business expenses, the propriety of certain loans that Linda apparently withdrew from the corporation, the manner in which the corporation booked depreciation expenses, and Linda's salary draw, which was in excess of the amount set forth in the property settlement agreement. We believe this demon-

strates a genuine issue of material fact as to whether the corporation and Linda were being honest in their financial calculations when Linda told William that the corporation was showing a loss every month.

 The district court refused to consider this second affidavit, reasoning that the evidence presented in the affidavit was inadmissible because there was no foundation and, based upon the district court's knowledge of accounting principles, the expert's basis for his opinion was "flawed or fundamentally unsound." We recognize that a district court is required to determine the admissibility of evidence prepared by an expert witness by examining foundational issues before ruling on a motion for summary judgment. *Hecla Mining Co. v. Star–Morning Mining Co.*, 122 Idaho 778, 839 P.2d 1192 (1992). However, the district court in the present case was not using "foundation" in the sense that the expert had not properly identified his qualifications or the basis for his opinions. *See* I.R.E. 702, 703. Rather, the district court was using the term "foundation" to criticize the facts considered and opinions held by the expert. This is ~~nothing more than~~ a weighing of evidence and a determination of a witness's credibility, which ~~clearly~~ is improper in a motion for summary judgment. *See Sohn v. Foley*, 125 Idaho 168, 868 P.2d 496 (Ct.App.1994). Consequently, we have concluded that it was error for the district court to strike the second affidavit prepared by William's expert. As a result of our determination that this second affidavit was admissible and demonstrated a genuine issue of material fact, we hold that the district court erred when it granted summary judgment for Linda on William's fraud claim.

## D. Amending The Complaint

 William contends that the district court erred when it determined that his proposed claims for constructive fraud and mutual mistake were deficient, as a matter of law, and, thus, refused to allow William to amend his complaint to plead constructive fraud. We agree that the district court erred. We recognize that the decision to grant or refuse permission to amend a complaint is left to the sound discretion of the trial court when a party proposes to amend its complaint after a responsive pleading is served. I.R.C.P. 15(a); *Jones v. Watson*, 98 Idaho 606, 570 P.2d 284 (1977). We also recognize that this Court has determined that a trial court properly refuses permission to amend a complaint when the record contains no allegations that, if proven, would entitle the party to the relief claimed. *Black Canyon Racquetball Club, Inc. v. Idaho First Nat'l Bank*, 119 Idaho 171, 804 P.2d 900 (1991). Nonetheless, as this Court indicated in *Wickstrom v. North Idaho College*, 111 Idaho 450, 725 P.2d 155 (1986), in the interest of justice, district courts should favor liberal grants of leave to amend a complaint.

 Following this general guideline, we believe that the district court heard William's motion to amend sufficiently early in the proceedings to warrant granting William's request. Furthermore, we believe there is at least some basis for both causes of action William proposed to plead. An action in constructive fraud exists when there has been a breach of a duty arising from a relationship of trust and confidence, as in a fiduciary duty. *McGhee v. McGhee*, 82 Idaho 367, 371, 353 P.2d 760, 762 (1960). Based upon our conclusions above regarding the possibility of a fiduciary duty owed by Linda to William, there is some basis for an allegation of constructive fraud. Additionally, we believe William has alleged enough for a claim of mutual mistake. A mutual mistake occurs when both parties, at the time of contracting, share a misconception regarding a basic assumption or vital fact upon which the bargain is based. *Leydet v. City of Mountain Home*, 119 Idaho 1041, 812 P.2d 755 (Ct.App.1991). Based upon Linda's statements that she relied completely on the bookkeeper's records and was totally unaware that there might have been an error in the way the bookkeeper was showing depreciation, there is, at least, some basis for a showing of mutual mistake regarding the corporation's profitability and the value of William's stock.

## E. Attorney's Fees

William raises four issues on appeal regarding the district court's award of attor-

ney's fees to Linda. First, he claims that the district court abused its discretion when it determined that William's action was frivolous and accordingly awarded attorney's fees. Next, William alleges that the district court erred when it interpreted the release of Linda's counterclaim as excepting Linda's claim for attorney's fees incurred in defense of William's complaint. William also contends that the district court abused its discretion when it awarded attorney's fees in excess of the amount billed by Linda's attorney. Finally, William claims that the district court erred when it awarded fees to Linda because, in reality, the corporation was paying her legal fees. Although our decision to vacate the district court's grant of summary judgment necessarily renders the issue of attorney's fees moot, we address the last three issues raised by William, as we believe they may very well be presented to us again.

■ The language at issue in the release specifically provides:

The parties to this Release and Indemnity Agreement specifically understand and agree that the release and indemnity provisions contained herein have no application whatsoever to the claims of Linda Hines for attorney fees, costs or other recoverable amounts, except all amounts recoverable or attributable to the Counterclaim or Amended Counterclaim, as to her defense of the Complaint in Case No. 97456 which was initiated by William J. Hines against Linda Hines. The Releasor [Linda Hines] specifically reserves the right to proceed with an application or motion for the assessment of costs, attorney fees and other expenses associated with the defense of the Complaint only, and that the release and indemnity provided herein do not relate to such proceedings, except with respect to costs and attorney fees specifically incurred or related to the Counterclaim or Amended Counterclaim which costs and fees are included within the settlement herein.

William argues that Linda wanted this provision included in the release only because she wanted to pursue Rule 11, I.R.C.P., sanctions against William and his attorney. In support of this argument, William has pointed to an affidavit from Linda's attorney. Although this affidavit may tend to support William's argument, we believe that the release is clear on its face and is not ambiguous. Thus, there is no need to resort to extrinsic evidence to interpret or modify the terms of what appears to be a clearly written document. *See Spencer–Steed v. Spencer,* 115 Idaho 338, 766 P.2d 1219 (1988); *International Eng'g Co., Inc. v. Daum Indus., Inc.,* 102 Idaho 363, 630 P.2d 155 (1981). Consequently, we hold that the district court did not err when it found that the release did not preclude Linda from pursuing costs and attorney's fees associated with her defense of the complaint.

■ William also claims that the district court improperly determined that Linda's attorney underestimated the amount of time and fees attributable to Linda's defense of the complaint and that the court abused its discretion when it sua sponte awarded more than Linda requested. The amount of attorney's fees awarded should be limited by the amount that Linda would have to pay her attorney and there is no basis for an award in excess of that amount. Thus, we conclude that the district court abused its discretion.

■ William also argues that the district court erred when it awarded fees to Linda because she did not incur any liability. Rather, according to William, the corporation incurred the liability for Linda's attorney's fees and an award of attorney's fees to Linda would result in a windfall to her. We disagree. Contrary to William's argument, the collateral source rule found in I.C. § 6–1606 is inapplicable to this case. Furthermore, we believe the arrangement Linda may have made with a third party regarding her attorney's fees is not relevant to the question of whether she, as a party, is entitled to be compensated for the attorney's fees incurred in defending against the complaint. Therefore, Linda, as the prevailing party, would have been entitled to attorney's fees pursuant to I.C. § 12–121.

### III.

### ISSUES ON CROSS–APPEAL

Linda challenges the district court's award of attorney's fees, claiming that it was error

for the district court to offset her award of attorney's fees by the amount received in settlement of her counterclaim. She also challenges the district court's refusal to award fees for paralegal services and certain discretionary costs. As with William's challenges to the award of attorney's fees, we address the issues raised by Linda only because we believe the issues may be presented to us again.

 When awarding attorney's fees, a district court must consider the applicable factors set forth in I.R.C.P. 54(e)(3) and may consider any other factor that the court deems appropriate. I.R.C.P. 54(e)(3)(L). Therefore, it was entirely appropriate for the district court to consider the release of the counterclaim when the court made its award of attorney's fees to Linda. Moreover, Linda admitted in interrogatories that the attorney's fees incurred in defending the complaint were the only quantifiable damages that she asserted in her counterclaim. Thus, the district court was correct when it offset her award of attorney's fees by a portion of the $32,500 she received in release of her counterclaim because Linda should not receive a double recovery.

■ We also believe that the district court was correct when it excluded fees for paralegal services from Linda's award of attorney's fees. Fees for paralegal services clearly are not contemplated as awardable attorney's fees or costs under I.R.C.P. 54(e)(3). Although the United States Supreme Court has approved an award for paralegal fees, *see Missouri v. Jenkins,* 491 U.S. 274, 109 S.Ct. 2463, 105 L.Ed.2d 229 (1989), we conclude that the Supreme Court's reasoning is inapplicable to our Idaho Rule 54(e)(3), I.R.C.P.

■ As to the discretionary costs that were not awarded, we believe that is clearly a matter of discretion for the district court. I.R.C.P. 54(d)(1)(D). The district court determined that the costs, which were associated with preparation of corporate documents, were not a necessary and exceptional expense because the documents "might have been done on account of any number of business concerns not related to the litigation."

The record supports this finding. Therefore, we do not find any abuse of discretion.

## IV.

## CONCLUSION

We vacate the district court's grant of summary judgment and remand the case to the district court for further proceedings consistent with this opinion. No attorney's fees or costs on appeal to either William or Linda.

JOHNSON, McDEVITT, SILAK and SCHROEDER, JJ., concur.