46 P.3d 518

**Richard C. LINDBERG and Deborah J. Lindberg, husband and wife, Plaintiffs–Appellants,**

v.

**Henry H. ROSETH, deceased, and Audrey A. Roseth, husband and wife, Defendants–Respondents.**

No. 25952.

Supreme Court of Idaho.
Cd'A, October 2001 Term.

April 29, 2002.

Paine, Hamblen, Coffin, Brooke & Miller, Coeur d'Alene, for appellants. Michael B. Hague argued.

Fender and Fender, Coeur d'Alene, for respondents. J. Stephen Fender argued.

TROUT, Chief Justice.

This is an appeal from the district court's judgment denying Richard and Deborah Lindberg's ("Lindbergs") claim for fraud and breach of express warranty related to the purchase of a home.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case involves the purchase and sale of a home in Coeur d'Alene, Idaho. The purchasers, the Lindbergs, claim that the sellers, Henry and Audrey Roseth ("Roseths") misrepresented the condition of the house and breached an express warranty concerning the roof of the house.

The parties entered into a written sales agreement ("Sales Agreement") for the sale of the home on September 26, 1996. Prior to entering into the Sales Agreement, the Lindbergs inspected the house on several occasions. On October 5, 1996, following an official inspection of the home, the Lindbergs provided the Roseths with a list of deficiencies concerning the condition of the house, which the Roseths subsequently cured. The Lindbergs soon thereafter received two home disclosure questionnaires regarding potential problems known about the home.

On October 23, 1996, instructions were given to the escrow agent to proceed with the closing on November 10, 1996. The transaction finally closed on November 15, 1996. The Lindbergs moved into the home in January 1997. During the period of time between the closing and the Lindbergs taking possession, the home was unoccupied. During this same period of time, the Coeur d'Alene area experienced a severe winter ice storm. Subsequent to moving into the house, the Lindbergs experienced numerous problems with the home, such as roof leaks, ice dams, blown off shingles, problems with the chimney, foundation leaks and instances of dry rot.

The Sales Agreement provided that the house was to be sold "AS IS," subject only to certain specified written warranties obligating the Roseths' "to correct items reasonably objected to in writing as identified in the Home Inspection Report." The Roseths specifically warranted that "on the date possession is made available to Buyer: (1) Roof shall be free of known leaks."

The Lindbergs filed a complaint on August 25, 1997, alleging fraud or intentional misrepresentation, and breach of express warranties in connection with the purchase/sale of the home. A five-day court trial was commenced on December 28, 1998, and at the conclusion, the court ordered closing arguments submitted in writing.

The Lindbergs filed a motion to amend the complaint to conform to the evidence on April 14, 1999. The district court issued an order on September 29, 1999, denying the Lindbergs' motion to amend and their claims for fraud and breach of warranty. The district court filed an amended judgment on December 15, 1999, awarding the Roseths costs and attorney's fees.

## II.

### STANDARD OF REVIEW

The party alleging intentional misrepresentation or fraud has the burden of proving the elements of fraud by clear and convincing evidence. *G & M Farms v. Funk Irrigation Co.*, 119 Idaho 514, 808 P.2d 851 (1991). If the district judge's findings of fact are supported by substantial and competent evidence, the appellate court will not disturb those findings. *Carney v. Heinson*, 133 Idaho 275, 985 P.2d 1137 (1999).

This Court exercises free review over the district judge's conclusions of law. *Carney v. Heinson*, 133 Idaho 275, 278, 985 P.2d 1137, 1140 (1999); *Marshall v. Blair*, 130 Idaho 675, 679, 946 P.2d 975, 979 (1997).

## III.

### DISCUSSION

**A. The district judge did not err in denying the Lindbergs' motion to amend the pleadings to conform to the evidence.**

Rule 15(b) of the Idaho Rules of Civil Procedure provides:

> When issues not raised by the pleading[s] are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

The purpose of the Lindbergs' motion to amend was to ensure their claims relating to the chimney were included in their claim. They argue that the Roseths impliedly consented to litigating the defects in the chimney, evidenced by an answer to an interroga-

tory, the relation to the leaking roof, and inconsistent defenses offered by the Roseths.

■ The determination whether an issue has been tried with the consent of the parties is within the trial court's discretion, and such determination will only be reversed when that discretion has been abused. *Smith v. King,* 100 Idaho 331, 335, 597 P.2d 217, 221 (1979); *Lynch v. Cheney,* 98 Idaho 238, 561 P.2d 380 (1977). In reviewing an exercise of discretion, this Court must consider (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Continental Cas. Co. v. Brady,* 127 Idaho 830, 834, 907 P.2d 807, 811 (1995); *Sun Valley Shopping Ctr. v. Idaho Power Co.,* 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991).

Here, the district judge perceived the issue as one of discretion, and correctly set out and applied the standard for a motion to amend. The district judge reached his decision by an exercise of reason illustrated by his statement that: (1) the Lindbergs' motion was untimely; (2) the Lindbergs' pleadings did not give notice of the chimney issue; and (3) while some discovery touched upon the issue, the Roseths were not given the opportunity to meet the chimney evidence.

The record fully supports this finding. First, the Lindbergs' motion was filed approximately four months after the last evidence was presented. Second, the district judge articulated his reasons for finding the Lindbergs' pleadings did not give notice of the chimney issue, stating that although some discovery touched upon the issue, it was insufficient. Finally, the Roseths expressly articulated in their trial brief their specific intent to try only those issues framed by the pleadings.

Because the record fully supports the district judge's determination, there is no abuse of discretion and the decision to deny the Lindbergs' motion is affirmed.

**B. The district judge erred in holding the Lindbergs did not rely and had no right to rely upon representations by the Roseths.**

■ The Lindbergs alleged the Roseths made misrepresentations concerning leaks in the house's roof and basement, and the structural soundness of the walls, ceilings, floors and foundation. To prevail on an action for fraud or misrepresentation, the following elements must be established by clear and convincing evidence:

(1) a statement or a representation of fact; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity; (5) the speaker's intent that there be reliance; (6) the hearer's ignorance of the falsity of the statement; (7) reliance by the hearer; (8) justifiable reliance; and (9) resultant injury.

*Hines v. Hines,* 129 Idaho 847, 851, 934 P.2d 20, 24 (1997).

The district judge concluded that the Lindbergs failed to prove, by clear and convincing evidence, a claim for misrepresentation because the Lindbergs had no right to rely on representations made by the Roseths, and the Lindbergs did not rely on such representations. The district judge did not make any findings as to whether the Roseths made these representations alleged. Rather, the district judge concluded, as a matter of law, the Lingbergs did not rely upon the representations and in fact, had no right to rely on them.

### 1. *Actual Reliance*

■ The district judge determined that the Lindbergs did not rely on the representations contained in the Seller's Property Condition Disclosure and PRDS Supplemental Seller Checklist because their decision to purchase was finalized prior to the receipt of such documents. The Sales Agreement was executed September 26, 1996, the Seller's Property Condition Disclosure and PRDS Supplemental Seller Checklist were signed and delivered to the Lindbergs on November 10, 1996, and the closing of escrow occurred November 15, 1996. In his holding, the district judge overlooked the right of rescission provided by Idaho Code § 55–2515.[1]

■ The right of rescission provided by Idaho Code § 55–2515 only arises after the parties have entered into their real estate contract. It is based upon the contents of a property disclosure form, or an amendment thereto, delivered by the seller to the purchaser after their contract has been executed. As the statute provides:

> [I]f a transferee of residential real property receives a property disclosure form or an amendment of that form ..., after the transferee has entered into a transfer agreement with respect to the property, the transferee, after his receipt of the form or amendment may rescind the transfer agreement in a written, signed and dated document that is delivered to the transferor or his agents in accordance with section 55–2510, Idaho Code.

Therefore, the purchaser's rescission must be based upon a specific objection to a disclosure in the disclosure statement, and it must occur within three business days following receipt of that statement. I.C. § 55–2515.

The Lindbergs allege that the statements in the property disclosure forms signed by Audrey Roseth misrepresent the condition of the house. Assuming they are correct, i.e. had truthful representations been made in the disclosure forms, the Lindbergs would have had the statutory right to rescind the real estate contract. Therefore, the district judge erred in holding there could be no reliance because the alleged misrepresentations were made in the property disclosure forms delivered after the execution of the real estate contract.

### 2. *Right to Rely*

■ The district judge held, as a matter of law, the Roseths only had the right to rely upon representations contained in the Sales Agreement because all other representations merged into that agreement. The court held that only representations upon which a claim for fraud can be based are those contained in the parties' contract. In support of this holding, the district court relied on *Galaxy Outdoor Advertising, Inc. v. Idaho Transportation Department,* 109 Idaho 692, 710 P.2d 602 (1985). The district judge misread the holding of *Galaxy Outdoor Advertising, Inc.* In *Galaxy Outdoor Advertising, Inc.* the plaintiffs and the Idaho Department of Transportation "Department" entered into a series of written contracts under which the Department was not required to complete unless the federal government provided funding. The plaintiffs later brought actions against the Department for breach of contract and fraud. On appeal after summary judgment was granted to the Department, this Court held there was no evidence that the Department or its employees knowingly made false representations of material fact to the plaintiffs. This Court noted "[n]othing has been pleaded or asserted by affidavit or deposition which suggests that the Idaho Transportation Department, or its employees, *knowingly* made false representations of

---

1. Idaho Code § 55–2515 provides:

 **Rescission by transferee.**—Subject to section 55–2504, Idaho Code, if a transferee of residential real property receives a property disclosure form or an amendment of that form as described in section 55–2508, Idaho Code, after the transferee has entered into a transfer agreement with respect to the property, the transferee, after his receipt of the form or amendment may rescind the transfer agreement in a written, signed and dated document that is delivered to the transferor or his agents in accordance with section 55–2510, Idaho Code. Transferee's rescission must be based on a specific objection to a disclosure in the disclosure statement. The notice of rescission shall specifically identify the disclosure objected to by the transferee. Transferee incurs no legal liability to the transferor because of the rescission including, but not limited to, a civil action for specific performance of the transfer agreement. Upon the rescission of the transfer agreement the transferee is entitled to the return of, and the transferor shall return, any deposits made by the transferee in connection with the proposed transfer of the residential real property.

 · Subject to the provisions of section 55–2505, Idaho Code, a rescission of a transfer agreement may only occur if the transferee's written, signed and dated document of rescission is delivered to the transferor or his agent or subagent within three (3) business days following the date on which the transferee or his agent receives the property disclosure form prescribed under section 55–2508, Idaho Code. If no signed notice of rescission is received by the transferor within the three (3) day period, transferee's right to rescind is waived.

material fact to the advertising companies during the negotiations." *Id.* at 696, 710 P.2d at 606 (emphasis in original). This Court did not hold false representations "during the negotiations" could not form the basis of a fraud claim. Rather, this Court held there was insufficient evidence that knowingly false misrepresentations were made.[2]

It is well settled that in an action for a breach of contract, oral stipulations, agreements, and negotiations prior to the execution of the written contract are presumed merged into the contract, and evidence of them cannot be admitted to contradict the plain terms of the contract. *Thorn Creek Cattle Ass'n, Inc. v. Bonz,* 122 Idaho 42, 46, 830 P.2d 1180, 1184 (1992); *Valley Bank v. Christensen,* 119 Idaho 496, 498, 808 P.2d 415, 417 (1991). Under the parol evidence rule, if the written agreement is complete on its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract. *Id.* The parol evidence rule, however, does not preclude admission of evidence that one party to a contract made representations that fraudulently induced the other party to enter into the contract. *Thomas v. Campbell,* 107 Idaho 398, 402, 690 P.2d 333, 337 (1984) (citing *Glenn Dick Equip. Co. v. Galey Constr., Inc.,* 97 Idaho 216, 223, 541 P.2d 1184, 1191 (1975); *Util. Eng'g Inst. v. Criddle,* 65 Idaho 201, 141 P.2d 981 (1943); *Kloppenburg v. Mays,* 60 Idaho 19, 34, 88 P.2d 513, 519 (1939); *Wollan v. McKay,* 24 Idaho 691, 135 P. 832 (1913)). Parol evidence is admissible for the purpose of showing fraud in inducing someone to enter into a contract. *Id.* Therefore, the

district court erred in holding, as a matter of law, that the only representations upon which a fraud claim could be based were those stated in the contract.

The district judge also based his conclusion that the Lindbergs were not entitled to rely upon the alleged misrepresentations by the Roseths because the Lindbergs had conducted their own independent inspection of the house. The district judge cited *Walker v. Nunnenkamp,* 84 Idaho 485, 373 P.2d 559 (1962) in support of this proposition. This Court, in *Walker,* stated, "[w]here a party relies upon his own investigation or judgment as to the value of property, he is not entitled to relief upon the ground of false representations." *Id.* at 491, 373 P.2d at 562 (citations omitted).

An inspection of the property, by itself, does not preclude buyers from bringing an action for fraud. If any latent defects that are not discoverable upon a reasonable inspection exist, the buyer who has made an inspection and did not discover such defects can still recover if the seller fraudulently failed to disclose or misrepresented the existence of such defects. *Tusch Enter. v. Coffin,* 113 Idaho 37, 49–50, 740 P.2d 1022, 1034–35 (1987); *Bethlahmy v. Bechtel,* 91 Idaho 55, 59, 415 P.2d 698, 702 (1966).

In this case, the district judge did not make findings either that the Lindbergs discovered the defects in the house during their inspection or that such defects were discoverable upon reasonable inspection. The defects centered upon water leaks and dry rot. If the house was inspected when it was not raining, and there were no apparent water stains, water leaks may not have been discoverable. The Lindbergs' inspector testified

2. The district judge may have misinterpreted the language immediately below this Court's holding to apply to the fraud claim, which states:

Nor do we find merit in the many other allegations of error raised by the advertising companies. It must be remembered, in considering these allegations, that this Court has before it an unambiguous agreement, executed between sophisticated people who were negotiating through attorneys. Oral stipulations, agreements, and negotiations prior to the execution of a written contract are presumed merged

therein and will not be admitted to contradict the plain terms of the contract. *Ringer v. Rice,* 97 Idaho 105, 108, 540 P.2d 290, 293 (1975); *Tapper Chevrolet Co. v. Hansen,* 95 Idaho 436, 439, 510 P.2d 1091, 1094 (1973). As stated earlier, we will not now revise a contract in order to make a better agreement than the advertising companies, and their counsel, made for themselves.

*Galaxy Outdoor Advertising, Inc.* at 696, 10 710 P.2d at 606. This language relates to the "many other allegations ... raised by the advertising companies," not the fraud claim.

that he could not go onto the roof because of its steep pitch. Instead, he looked at the roof of the two-story from the ground, and at a portion of the roof from an upstairs window. He also testified he was not permitted to move furnishings or other items of personal property in order to examine the interior of the house, and his examination of the basement was therefore limited. He testified he was unable to discover water leaks in the roof or the basement. In his report, he did not make any statement as to whether or not the roof leaked, nor did he make any statement as to whether or not the basement leaked. He did include a standard caveat regarding the basement, however, which provided:

### * * * BASEMENT * * *

Water seepage and moisture penetration are common problems in basements usually resulting from inadequate water management above ground. Most causes can be corrected by improving drainage and grading. Our review of the basement cannot always detect the past or future possibility of water in this area. If you are concerned about this possibility, we suggest that you inquire with the owner. NOTE: The presence of a sump pump can suggest water has or may enter the basement.

The Roseths argue the Idaho Code itself absolves them from any liability as the Idaho Property Condition Disclosure Act ("IPCDA") (I.C. § 55–2501 et. seq.) expressly releases a transferor from liability where an independent inspection is made and delivered to the transferee prior to the close of escrow. The Seller's Property Condition Disclosure and PRDS Supplemental Seller Checklist are statutorily mandated by the IPCDA. Idaho Code § 55–2511 provides:

(1) Neither the transferor or transferor's agents shall be liable for any error, inaccuracy or omission of any information delivered pursuant to this chapter if the error, inaccuracy or omission was not within the personal knowledge of the transferor or was based upon information timely provided by public

agencies or other persons specified in subsection (3) of this section that is required to be disclosed pursuant to this chapter and ordinary care was exercised in obtaining and transmitting it.

(2) . . .

(3) The delivery of a report or opinion prepared by any person or professional who has been hired to perform an inspection of the subject property in connection with the proposed sale shall be sufficient compliance for application of the exemption provided in subsection (1) of this section if the information is provided to the prospective transferee pursuant to a request therefore, written or oral. In responding to such a request, an expert may indicate, in writing, an understanding that the information provided will be used in fulfilling the requirements of sections 55–2506 and 55–2507, Idaho Code, and if so, shall indicate the required disclosure or parts thereof to which the information being furnished is applicable. Where such a statement is furnished, the provider shall not be responsible for any items of information or parts thereof other than those expressly set forth in the statement.

The effect of I.C. § 55–2511(1) is to obviate the transferor from liability for any error, inaccuracy or omission of information if the error was not within the transferor's personal knowledge or was based upon information provided by some other entity. Under subsection (1), a seller is not liable for any error, inaccuracy or omission of any information in a property disclosure form in two circumstances. First, the owner is not liable if the error, inaccuracy or omission was not within his or her personal knowledge. Second, the owner is not liable if: (a) the error, inaccuracy or omission was based upon information timely provided by public agencies or by persons specified in subsection (3) of the statute; (b) the information was required to be disclosed pursuant to Chapter 25 of Title 55; and (c) ordinary care was exercised in obtaining and transmitting the information.

The relevant language of subsection (3) provides

[t]he delivery of a report ... by any person ... hired to perform an inspection ... shall be sufficient compliance for application of the exemption provided in subsection (1) of this section if the information is provided to the prospective transferee pursuant to a request therefore, written or oral.

Although the statute is silent as to who is to deliver the report, reading the statute in context, the language of section 55–2511 indicates it refers to the delivery of a report by the seller. The legislative intent underlying the adoption of the Idaho Property Disclosure Act was to "... require sellers of residential real property ... to disclose certain defects in the residential real property to a prospective buyer." I.C. § 55–2502. Subsection (3) further provides that the expert who prepares the report "may indicate, in writing, an understanding that the information provided will be used in fulfilling the requirements of sections 55–2506 and 55–2507, Idaho Code...." Those two code sections deal with the seller's duty to disclose certain information about the condition of the real property being sold.[3]

Here, the sellers did not deliver the report to the buyers. Rather, the Lindbergs had their own independent inspection performed.

Therefore, section 55–2511 does not apply to in this case, and the Lindbergs were entitled to rely on the Seller's Property Condition Disclosure and PRDS Supplemental Seller Checklist in the face of their own independently conducted inspection.

▮ Even if section 55–2511 were construed to cover reports by persons that the buyers hired to inspect the residential property, subsection (3) simply provides that the delivery of such report (presumably by the inspector to the buyer) "shall be sufficient compliance for application of the exemption provided in subsection (1)." As stated above, the exemption provided in subsection (1) is limited to two situations. First, the owner is not liable if the error, inaccuracy or omission was not within his or her personal knowledge. In this case, the Lindbergs presented evidence showing the errors or inaccuracies in the property disclosure forms were within the personal knowledge of Audrey Roseth. The PRDS Supplemental Seller Checklist asked various questions regarding the home. The questions were prefaced with the statement, "Please indicate throughout the entire checklist *past* as well as *present* defects and problems, *even where previously corrected or repaired.*" (Emphasis in original). The questions, and her answers, included the following:

---

**3.** Idaho Code § 55–2506 provides:

**Disclosure information.**—The information required in this chapter shall be set forth on the form set out in section 55–2508, Idaho Code. Alternative forms may be substituted for those set out in section 55–2508, Idaho Code, provided that alternative forms include the disclosure information as set forth in section 55–2506, Idaho Code, and the mandatory disclosure statements set forth in section 55–2507, Idaho Code. The form must be designed to permit the transferor to disclose material matters relating to the physical condition of the property to be transferred including, but not limited to, the source of water supply to the property; the nature of the sewer system serving the property; the condition of the structure of the property including the roof, foundation, walls and floors; the known presence of hazardous materials or substances.
Idaho Code § 55–2507 provides:
**Mandatory required disclosure statements.**— To comply with the provisions of this chapter,

a form shall set forth a statement of purpose of the form, including statements substantially similar to the following:
(1) The form constitutes a statement of the conditions of the property and of information concerning the property actually known by the transferor.
(2) That unless the transferee is otherwise advised in writing, the transferor, other than having lived at or owning the property possesses no greater knowledge than that which could be obtained by a careful inspection of the property by a potential transferee.
(3) That the statement is not a warranty of any kind by the transferor or by any agent or subsequent agent representing the transferor in this transaction.
(4) That the statement is not a substitute for any inspections.
(5) That the transferor is familiar with the particular residential real property and each act that may be performed in making a disclosure of an item of information shall be made and performed in good faith.

| Question | Answer |
| --- | --- |
| Are you aware of any cracks in the foundation walls, ceiling or any other part of the structure? | No |
| Are you aware of any water leakage or flooding to the interior of the structure due to plumbing failure or any other cause? | No |
| Are you aware of any past or present water intrusion into the house through the roof, siding, windows, skylights, fireplace, doors, or any other areas? | Yes, Attic windows left open during a rainstorm. |
| If yes, what repairs have been performed over the last three years as to any of the above-listed elements, and what warranties have been given as to repairs to the roof or any other roof or siding-related element? | None—Buyer is aware of stains in front of windows in attic. |
| Have you checked "No" as to any matter above which, although presently in good order, has to your knowledge, previously been a defect, problem or concern regarding the property? | No |

Audrey Roseth testified, however, that after the house was re-roofed in 1990, there was a leak around the chimney. She hired someone to repair the leak, but sometime prior to the sale, it leaked again, and she did not hire anyone to repair it a second time. She also testified there had been leaks in the basement foundation in 1990. The foundation was stone, and the grouting had obviously deteriorated. Not only did she have the stone regrouted, but wall members also had to be replaced because of dry rot. She also admitted to replacing the dry rotted floor joists under a bathtub. This indicates the errors or inaccuracies in the property disclosure form were within Audrey Roseth's personal knowledge. Although she testified she understood the Lindbergs to want the form answered only as to the current, not past problems with the house, the district judge did not make any findings regarding this issue.

Second, the owner is not liable if: (a) the error, inaccuracy or omission was based upon information timely provided by public agencies or by persons specified in subsection (3) of the statute; (b) the information was required to be disclosed pursuant to Chapter 25 of Title 55; and (c) ordinary care was exercised in obtaining and transmitting the information. The persons specified in subsection (3) would include an inspector, such as the one hired by the Lindbergs. Audrey Roseth did not testify, however, that the errors, inaccuracies, or omissions in the property disclosure forms were based upon information provided by the Lindbergs' inspector. Therefore, this exemption would not apply either.

Finally, the exemption provisions of Idaho Code § 55–2511 do not apply because the Lindbergs did not base their claim on the Idaho Property Condition Disclosure Act. Section 55–2517 of the Act provides a cause of action for willfully or negligently violating its provisions.[4] However, a cause of action under the Act is not intended to provide the exclusive remedy. Section 55–2514 specifically provides that other remedies provided by law are maintained.[5]

Because the Act provides a non-exclusive cause of action for willfully or negligently violating its provisions, the exemption from liability provided by Idaho Code § 55–2511 would only apply to the cause of action created by the act. The Lindbergs based their lawsuit upon common-law fraud and breach

4. Idaho Code § 55–2517 provides:

 **Failure to comply.**—No transfer, subject to this chapter, shall be invalidated solely because of the failure of any person to comply with any provision of this chapter. However, any person who willfully or negligently violates or fails to perform any duties prescribed by any provision of this chapter shall be liable in the amount of actual damages suffered by the transferee.

5. Idaho Code § 55–2514 provides:

 **Chapter does not relieve seller or his agent of obligation to disclose other information.**—

 Specification of items of information that must be disclosed in the property disclosure form as prescribed under sections 55–2506 and 55–2507, Idaho Code, does not limit and shall not be construed as limiting any obligation to disclose an item of information that is created by any other section of the Idaho Code or the common law of the state of Idaho. The disclosure requirements of this chapter do not bar and shall not be construed as barring the application of any legal equitable defense that a transferor of residential real property may assert in a civil action commenced against the transferor by a prospective or actual transferee of the property.

of warranty in the contract. Since they did not base their lawsuit upon the Act, the exemption from liability provided therein does not apply.

Because the district judge improperly concluded that the Lindbergs had no right to rely on representations made by the Roseths, and the Lindbergs did not rely on such representations, and made no findings as to whether the Roseths made the representations alleged, we reverse and remand for further findings.

**C. The district judge erred in holding the Lindbergs did not establish a breach of express warranty.**

 The district judge determined the Lindbergs failed to prove a breach of the express warranty relating to the roof. The breach of a duty requires factual findings. *Hanks v. Sawtelle Rentals, Inc.*, 133 Idaho 199, 984 P.2d 122 (1999). Therefore, the district judge's determination will not be disturbed if the findings of fact are supported by substantial and competent evidence. *Id.*

The Lindbergs argue the district judge improperly refused to consider any statements, covenants, or warranties beyond the provisions of the Sales Agreement, erroneously applying the parol evidence rule. Whether the parol evidence rule is applicable or not is irrelevant. The Lindbergs' claim for breach of express warranty is specifically based upon the Sales Agreement. The Sales Agreement provides a Sellers' Limited Warranty: "Seller warrants that on the date possession is made available to Buyer: (1) Roof shall be free of *known* leaks ...." (emphasis added). The Sales Agreement further provides "[e]xcept for the warranties contained in this paragraph, the property is being sold ... 'AS IS'...." Thus, the only claim the Lindbergs have concerning a breach of express warranty pertains to the roof.

The evidence presented at trial indicates there was a history of problems with the roof and leaks. There was a stain on the kitchen ceiling due to a radiator leak, an attic window was once left open during a rainstorm, on two occasions a few shingles blew off the roof, a pipe had burst in the attic, the bath-tub had been overfilled a few times, and an ice dam was formed on the roof. However, most of these occurrences were subsequently repaired or explained away.

Nevertheless, Audrey Roseth testified to two instances in which water leaked around the chimney of a second-floor fireplace, wetting the wall near the chimney. She testified:

Q ... Were you familiar with the ice storm of 1996?

A. Yes, very much so.

Q. So, there was a second leaking problem you've described in the chimney area, that was before the ice storm of 1996?

A. Yes.

Q. So the ice storm of 1996 could not have caused the second incident of water coming into—

A. No. It was before.

Q. You didn't send Dan [the man hired to perform maintenance on the house for the Roseths] up to address that second incident, did you?

A. I don't think I did. No. I think I told him about it.

She later testified that the second incident occurred shortly before the Lindbergs looked at the house and that she told the Lindbergs about the leak. Thus, Audrey Roseth's testimony shows there was in fact a leak in the roof and she knew about it prior to entering into the Sales Agreement and closing. With respect to this particular leak, the record indicates that the Roseths breached this warranty.

With respect to the other claims for breach of warranty, the Lindbergs were not able to establish, even if the roof leaked at the time of closing, that the Roseths knew of such leaks. From the record, it appears that as far as the Roseths knew at the time of closing, there were no more problems. The evidence presented suggests the possibility the other leaks were due to other causes. The closing of escrow occurred on November 15, 1996, and the Lindbergs did not take possession until approximately January 18, 1997. During this period of vacancy, there

was a severe winter ice storm in the Coeur d'Alene area, the Lindbergs had several contractors begin work around the home, and there was no caretaker to tend the home for winter.

The district judge erred in finding that the Lindbergs failed to produce any evidence that the roof had any known leaks at the time they were entitled to possession. We therefore reverse the district judge's conclusion that the Lindbergs failed to prove a breach of express warranty with respect to the leak around the chimney. With respect to the other claims for breach of warranty, we affirm.

### D. We vacate the award of costs and attorney's fees to the Roseths.

 The district judge awarded the Roseths costs based upon I.R.C.P. 54(d)(1) because they were the prevailing party, and attorney's fees based upon I.R.C.P. 54(e)(1) because the Sales Agreement provided attorney's fees to the prevailing party.

Because we reverse, and find the Roseths should not be the prevailing party, we vacate the award of costs and attorney's fees to them. Accordingly, we need not address the issue as to whether the district judge abused his discretion in failing to apportion the fee award between the claims for breach of contract and fraud.

### E. Attorney's fees and costs on appeal.

 Attorney's fees on appeal may be awarded to the prevailing party pursuant to a real estate agreement. *Realty West, Inc. v. Thomas,* 95 Idaho 262, 506 P.2d 830 (1973). The Sales Agreement contains a provision entitling the prevailing party to recover its costs and reasonable attorney's fees. Therefore, the Lindbergs should be awarded their costs and attorney's fees on this appeal. For the reasons set forth above, the Roseths are not the prevailing party on appeal and, therefore, their request for attorney's fees and costs on appeal is denied.

### IV.

### CONCLUSION

Based on the foregoing, we hold the district judge did not err in denying the Lind-

bergs' motion to amend the pleadings to conform to the evidence. The district judge, however, did err in holding the Lindbergs did not rely and had no right to rely upon representations by the Roseths. We also hold the district judge erred in concluding the Lindbergs failed to established a breach of express warranty (pertaining to the leak around the chimney). We therefore reverse the district judge's decision dismissing the claims for fraud and breach of express warranty and remand in accordance with our decision.

The Sales Agreement specifically provides for costs and attorney's fees to the prevailing party. We therefore vacate the award of costs and attorney's fees to the Roseths, and grant the Lindbergs' request for costs and fees on appeal.

Justices SCHROEDER, WALTERS, KIDWELL and EISMANN, concur.