631 P.2d 614

STATE of Idaho ex rel. John V. EVANS, Governor, Pete T. Cenarrusa, Secretary of State; Wayne L. Kidwell, Attorney General; Roy E. Truby, Superintendent of Public Instruction; and Joe R. Williams, Auditor, as the State Board of Land Commissioners; Gordon C. Trombley, Superintendent of Public Lands, and the Idaho State Board of Health, Plaintiffs-Respondents,

v.

James CLICK, Sr., Eugene Weiss and Orral Lake, Individually and as a Mining Partnership, Defendants-Appellants.

No. 13057.

Supreme Court of Idaho.

May 27, 1981.

Rehearing Denied Aug. 17, 1981.

---

Barry L. Marcus, Boise, for defendants-appellants.

David H. Leroy, Atty. Gen., Ursula I. Kettlewell, Roy L. Eiguren and Lynn E. Thomas, Deputy Attys. Gen., Boise, for plaintiffs-respondents.

McFADDEN, Justice.

The defendants-appellants are residents of Montana doing business in Idaho as a mining partnership. In 1969, they commenced dredge mining activities on unpatented federal land in the St. Joe National Forest (now the Idaho Panhandle National Forest.) The mining claims are located adjacent to Sherlock Creek, a tributary of the St. Joe River.

In 1972, the plaintiff-respondent State of Idaho commenced an action against the appellants seeking to enjoin their mining activities under the Idaho Dredge and Placer Mining Protection Act, I.C. § 47–1312 et seq., until they secured a permit under the act.[1] The complaint also sought restoration of the area already impacted. I.C. § 47–1324, 47–1314. A temporary restraining order was sought, and granted, halting the mining pending determination of the state's motion for a preliminary injunction. This order was dissolved due to the concurrent prosecution of a federal action concerning the same mining operation. However, the federal courts abstained pending resolution of the state action, and the state's earlier motion for a preliminary injunction was again set for hearing. The district court granted this motion and enjoined appellants' mining during the pendency of the litigation. Appellants soon thereafter answered the complaint and filed a counterclaim seeking declaratory relief in the form of a holding that the act was unconstitutional under one or more theories. In 1975, the district court held the Idaho act in conflict with the power of the federal government to manage and dispose of public domain land under the Property Clause (U.S.Const. Art. IV, § 3, cl. 2) and therefore had to fail under the Supremacy Clause (Art. VI cl. 2). The court then dissolved the preliminary injunction and enjoined the state from enforcing the act against the appellants.

Upon the state's appeal, this court in *State ex rel. Andrus v. Click*, 97 Idaho 791, 554 P.2d 969 (1976) (*Click I*), reversed the decision, holding that there was no conflict between the state and federal laws as they applied to this situation sufficient to invoke the preemption of the Supremacy Clause. The case was remanded for continuation of proceedings upon the state's original complaint.

In March 1978, on remand, the State continued the litigation by filing a motion seeking another preliminary injunction against the appellants' mining activities pending resolution of the action as well as a motion to consolidate the hearing on this

---

1. See I.C. § 47–1317(a), (c), § 47–1324. It is uncontested that the appellants have never applied for or been issued a permit under the Act.

injunction with a hearing on the issues raised by the original complaint and answer. *See* I.R.C.P. 65(a). These proceedings essentially sought prohibition of further activity on Sherlock Creek and restoration of the extant impact pursuant to I.C. § 47–1324. Hearing was held on both matters in early 1978. The district court rendered a decision on July 7, 1978, holding that the appellants were perpetually enjoined from further operations unless and until such time as they secured a permit under the act and, further, that immediate restoration of the impacted area was required. This order further appointed the director of the Idaho Department of Lands as a special master to oversee restoration and in the process provide a restoration plan. Should the appellants fail to comply with this plan, the order stated, the State could implement the plan and the costs thereof would constitute a "lien" on the appellants' property.

After this decision was entered, one of the appellants did some earth moving activity at the site of the mining operations without prior leave of the district court. The court found the appellant in contempt for violating the terms of the injunction.

In January 1979, the district court entered an order, to operate pending appeal, which stayed the restoration provisions of the July 1978 order (initially for one year); extended the "lien" provided for in the earlier order to cover the appellants' machinery as well as their claims; and enjoined the appellants from moving any of their equipment from the site without prior court authorization.

A hearing was held in July 1979 on the state's proposed restoration plan which had been prepared pursuant to the provisions in the earlier orders. An order was subsequently entered approving the State's plan.

The appellants have appealed the decisions of the district court enjoining their mining operations, requiring restoration, imposing the "lien" on their claims and machinery, and awarding costs and attorney fees to the State relative to the contempt charge.

Appellants first contend that the order requiring restoration impermissibly conflicts with federally granted mining rights and thus, under *Click I*, must fail.

The question of conflict between state and federal law in this situation and any consequent preemption under the Supremacy Clause was addressed at length in *Click I*. It would serve no purpose to reiterate that entire discussion here. The court held in *Click I*:

> "We find no such conflict [sufficient for pre-emption] is presented by the provisions of the Idaho Act requiring a permit or the restoration of the land. Neither the requirement of obtaining a permit or of restoring the land render it impossible to exercise rights specifically granted by the federal legislation, although they may make it more difficult." (Footnote omitted.) 97 Idaho at 797, 554 P.2d at 995.

■ Appellants state in their brief that enforcement of the Idaho act would "prevent" further mining. However, an analysis of the testimony of the appellant Weiss, certainly the evidence most supportive of this argument, indicates only that restoration would "interfere" with the mining and increase the costs of the operation. The expert testimony offered by the State indicated that restoration and mining activity were compatible though mining is made more difficult. The conclusion that these apparently dissimilar goals are generally viewed today as concurrently achievable is further evidenced by federal mining law with which the Idaho act is alleged to conflict; that is, federal law concerning mining on national forest land itself has analogous "permit," bond, and restoration components. *See generally* 36 CFR 252.[2] In gen-

---

**2.** By decision issued April 13, 1981, in *United States v. Weiss*, 642 F.2d 296, the Ninth Circuit Court of Appeals has determined that these Forest Service regulations, which require, *inter alia*, an "operations plan" and reclamation as- sured by bond, were applicable to appellants' mining activities. While appellants argued there, as here, that no regulations could operate to infringe upon or lessen their "federal mining rights," the Ninth Circuit held:

eral, appellants' contention that the restoration requirements render it factually "impossible" for appellants to exercise federal mining rights, and thus come within the above quoted portion of *Click I*, is not supported by the evidence. Without such a showing, *Click I* is dispositive upon this point. There is substantial and competent evidence contrary to the appellants' contention in this regard which supports the conclusions reached by the district court. The order of restoration is therefore affirmed. *Cougar Bay Co. Inc. v. Bristol*, 100 Idaho 380, 383, 597 P.2d 1070, 1073 (1979).

The appellants raise a subsidiary issue in regard to the restoration requirement. They contend that certain language in the act, found in I.C. § 47–1314, limits the time at which a requirement to restore the area may be imposed to that period after the conclusion of mining operations. Therefore, they argue, since they have not concluded their plans for mining in the Sherlock Creek area, the injunction mandating restoration is premature.

Appellants, in this regard, place great reliance upon the last sentence in I.C. § 47–1314, which states:

"Lands dredged or placered to be smoothed and watercourses replaced.— Where any person, firm, or corporation conducts a dredge or other placer mining operation on lands and beds of streams in the state of Idaho, it is hereby required that the ground disturbed thereby shall be by such operator leveled and smoothed over reasonably comparable with the natural contour of the ground prior to such disturbance, and to a condition conducive

to the growth of verdure, and any watercourse disturbed by such dredging shall be by such operator replaced on meander lines with pool structure conducive to good fish and wildlife habitat and recreational use. Whenever a dredging or other placer operation results in the substantial removal of topsoil, as determined by the state land board, the operator shall be required to restore the land to its original condition, by the addition of topsoil and the planting of grass, trees and other vegetation, *insofar as is reasonably possible after the conclusion of the dredging operation*." (Appellants' emphasis.)

This reliance is misplaced.

At the outset it can be observed that the specific language emphasized by appellants in the above section appears to concern the problem of replacing topsoil and planting vegetation when substantial amounts of topsoil have been removed during the dredging operation. The more general requirement of restoring the land contours and watercourses disturbed as set forth in the first part of this section contains no such arguably restrictive language. Appellants, however, choose to argue that this single phrase should be construed to halt all restoration until after the appellants have decided that their operations have been concluded.

We must consider appellants' contentions in this regard in light of well established rules of statutory construction. Where there is ambiguity or where language is capable of more than one construc-

---

"We believe that the important interests involved here were intended to and can coexist. The Secretary of Agriculture has been given the responsibility and the power to maintain and protect our national forests and the lands therein. While prospecting, locating and developing of mineral resources in the national forests may not be prohibited nor so unreasonably circumscribed as to amount to a prohibition, the Secretary may adopt reasonable rules and regulations which do not impermissibly encroach upon the right to the use and enjoyment of placer claims for mining purposes.[5]

[5] We emphasize that the reasonableness of the regulations has not been put into issue. Although authority exists for the promulgation of regulations, those regulations may, nevertheless, be struck down when they do not operate to accomplish the statutory purpose or where they encroach upon other statutory rights. Appellants have not attempted to comply with the regulations; therefore, those issues are not before us on this appeal. *Compare Agins v. City of Tiburon*, 447 U.S. 255, 258–262, 100 S.Ct. 2138, 2140–2142, 65 L.Ed.2d 106, 111–112 (1980)."

tion, the consequences of a proposed interpretation should be considered. *Smith v. Dept. of Employment*, 100 Idaho 520, 522, 602 P.2d 18, 20 (1979); *Lawless v. Davis*, 98 Idaho 175, 177–8, 560 P.2d 497, 499–500 (1977). Resolution should be in favor of reasonable operation of the statute. The statute will not be deprived of its potency if a reasonable alternative exists since the legislature is presumed not to have enacted a meaningless statute. *State v. Rawson*, 100 Idaho 308, 312, 597 P.2d 31, 35 (1979); *Maguire v. Yanke*, 99 Idaho 829, 836, 590 P.2d 85, 92 (1978); *State v. Gibbs*, 94 Idaho 908, 911, 500 P.2d 209, 212 (1972). The plain, obvious and rational meaning is always preferred to any hidden, narrow or irrational meaning. *Higginson v. Westergard*, 100 Idaho 687, 691, 604 P.2d 51, 55 (1979); *Nagel v. Hammond*, 90 Idaho 96, 408 P.2d 468 (1965). And stated policy grounds may be utilized to determine the meaning of the statute. *Smith, supra; Summers v. Dooley*, 94 Idaho 87, 89, 481 P.2d 318, 320 (1971).

■ To hold here that the restoration clearly mandated by the act is inapplicable to the appellants' operation because they have yet to complete mining would be a perverse construction of the act. As noted, the language relied upon is not so broad. But more importantly, the very purpose of the statute belies such an interpretation. Approved by an overwhelming margin of the people as an initiative measure in 1954, the act's stated purpose, in I.C. § 47–1312, is "to protect the lands, streams and watercourses within the state, from destruction by dredge mining and by placer mining, and to preserve the same for the enjoyment, use and benefit of all of the people . . . ." Even the present litigants have stipulated to the purposes of the act. *See Click I, supra*, 97 Idaho at 801, 554 P.2d at 979. Appellants' view would allow any and every mining operator to enter Idaho, ignore the permit and bonding requirements of the act, strip and dredge vast areas, and leave them in that condition without any concern for restoration so long as they felt they hadn't "completed" their mining. Such an interpretation would emasculate the act and completely defeat every stated purpose recognized in the act or by the parties. This court refuses to follow such a course. Neither this argument nor the preemption argument, *supra*, persuades the court that the restoration order of the district court was in error.[3]

■ Appellants next contend that they were excused from the permit requirement of the act. They make no persuasive argument as to why they were not subject to the act's requirements as of their commencement of operations in 1969 (see I.C. § 47–1317(a) which requires application for a permit *before* a person or corporation may conduct a dredge or other placer mining operation). Similarly, they make no persuasive argument why they were not subject to the requirement up to the time the district court ruled the act unconstitutional in 1975. The injunction prohibiting mining and mandating restoration is valid as to the consequences of the appellants' activities during these periods.[4] Appellants further argue that the permit was not required

---

3. While appellants also contend that they were only engaging in "preparation" and were not yet mining under the act, the state's expert witnesses testified to the contrary. Further, the act itself provides a definition of mining for the purposes of the act, and the record establishes that the appellants came within that definition. *See* I.C. § 47–1313. It is, as previously mentioned, uncontested that the appellants have never applied for a permit, must less held one, prior to commencement of their activities in 1969 or since.

4. While an argument might be made to the effect that any activity undertaken during the period between the decision of the district court holding the Idaho act unconstitutional and the decision of this court in *Click I* reversing that determination was not subject to the proscriptions of the act, appellants fail to make any showing of special or identifiable activity during this period. Without such evidence, the argument, even if correct, does not affect the ruling of the court prohibiting further mining activity and requiring restoration of the impact on the area which occurred from 1969 on in the absence of the required permit and bond.

after this court's decision in 1976 (*Click I*) because after this court held the act constitutional the state was then forced to seek another injunction against the appellants. This is palpably false; appellants confuse applicability of the act with its enforcement.

 Appellants continue in this style of argument stating that the effect of an amendment to the act also operated to relieve them of the obligation to obtain a permit. In 1977, the Idaho legislature amended I.C. § 47–1323 to include the St. Joe River and its tributaries among those Idaho waterways upon which dredge mining would be prohibited. 1977 Sess.Laws, ch. 114, p. 246. This section makes direct reference to the national legislation mandating protection for certain declared Wild and Scenic River Systems. See 16 U.S.C. § 1271 *et seq.* The St. Joe was placed in this national system the year following the Idaho legislature's amendment. 16 U.S.C. § 1274(a)(23). Appellants' basic contention in this regard is that the state was foreclosed, under the amendment, from issuing a permit after 1977, therefore their failure to apply for or obtain a permit was excusable. However, the putative effect of the 1977 amendment was never put into issue below. Indeed, the district court stated time and time again that this question was not involved in this litigation. Issues not raised and considered below will not be considered for the first time on appeal. *McNeil v. Gisler*, 100 Idaho 693, 696, 604 P.2d 707, 710 (1979); *Unigard Ins. Group v. Royal Globe Ins. Co.*, 100 Idaho 123, 127, 594 P.2d 633, 637 (1979); *Heckman Ranches Inc. v. State*, 99 Idaho 793, 799–800, 589 P.2d 540, 546–547 (1979).

Moreover, regardless of the amendment's effect in 1977, the injunction prohibiting mining and requiring restoration under the act was already warranted due to appellants' admitted failure to ever obtain a permit or post bond, either prior to commencing mining activities in 1969 or thereafter. The possible or arguable effects of the 1977 amendment on the permit requirement of the act are immaterial to the questions raised by this appeal.

The appellants next argue that the 1977 amendment constitutes a "taking" of their property (in the form of federal mining rights) and that they must be compensated therefor. Again we need not address this question as it was neither raised nor considered below. *McNeil, supra; Unigard Ins. Group, supra.* Furthermore, this question is the precise subject of another action brought by the appellants against the state of Idaho in the courts of the First Judicial District—a fact we judicially notice. I.C. § 9–101(3). There being substantial questions of law and fact involved in such an allegation,[5] the rationale behind the rule that we will not consider previously unraised issues becomes readily apparent.

 The appellants next assign as error the district court's imposition of a "lien" upon their machinery and claims in order to secure the costs of preparing the restoration plan and possibly the costs of restoration itself should appellants fail to restore pursuant to the court's order. While the district court may have confused the issue here by the manner in which it imposed and the way it characterized the "lien," a review of the record indicates that the original imposition of the encumbrance upon the appellants' claims and the later modifica-

---

**5.** A "taking" is necessarily concerned with the nature and scope of the property allegedly infringed upon or denied, here the property consists of appellants' federal mining "rights." We note that there are serious questions present concerning these rights, for example, the effect of the addition of the St. Joe to the protected national Wild and Scenic River System (16 U.S.C. § 1274(a)(23); see also the withdrawal of land adjacent to such systems, 16

U.S.C. § 1279 and the effect of such classification on mining, 16 U.S.C. § 1280); an apparent previous withdrawal of much of the area here under consideration from mining appropriation pursuant to a "streamside zone" withdrawal order (Department of Interior, Public Land Order 4716, October 10, 1969, at 34 Fed.Reg. 16622–23, October 17, 1969); and myriad factual problems inherently present in such condemnation actions.

tion to also include the appellants' machinery, was meant to secure the costs to be incurred by the state under the act and the court's orders. This action in effect replaced the security ordinarily assured by the statutory requirement for a bond. See I.C. § 47–1317. The original "lien" was but the functional equivalent of the statutory bond. Furthermore, it is our conclusion that such action was within the inherent power of the court to insure compliance with not only the intent of the statute but also its own related orders. See I.C. § 1–1603.

The imposition of the lien and the additional encumbering of the machinery is also justified in respect to the present appeal taken from the district court's order enjoining the appellants' activities. I.R.C.P. 62(c) grants the court the power to grant, suspend or modify an injunction during the pendency of an appeal upon imposition of sufficient security through bonds or other means to preserve the subject matter of the litigation and the rights of the parties. 7 Moore's Federal Practice ¶ 62.05 (1979), in regard to the comparable federal rule, states

> "Rule 62(c) is merely expressive of a power inherent in the court to preserve the status quo where, in its sound discretion, the court deems the circumstances so justify."

Given this recognized power, expressly referred to by the district court below, we find no abuse of discretion in the court's actions in this regard.[6]

Lastly, the appellants argue that the awarding of attorney fees to the state pursuant to the contempt finding against one of the appellants was improper. The argument notes that I.C. § 7–601(5) makes the violation of a lawful order of the court a contempt; they argue that the injunction violated by the appellant here was not such a "lawful order" since it itself violated the preemption clause, was negated by the 1977 amendment, and so on. Each of the proferred reasons for the injunction being something other than a lawful order has been found wanting, *supra*. The injunction being valid and "lawful," its violation was therefore grounds for contempt. I.C. § 7–601, I.C. §§ 1–1901, 1902. The appellants do not make any other arguments in regard to the award of attorney fees; therefore the award of fees, an action within the sound discretion of the district court, will not be disturbed here.

The order of the district court is affirmed. Costs to respondent.

BAKES, C. J., and BISTLINE, DONALDSON and SHEPARD, JJ., concur.

---

**6.** Though not raised by the parties, the arguable application of I.R.C.P. 54(d)(4) should be mentioned. This rule prohibits a cost bond being required of a party by reason of the fact that he is not a resident of the state. The action of the court here was primarily and essentially concerned with a means of achieving the protection contemplated by the bonding provisions of the Dredge and Placer Mining Protection Act and maintaining the status quo while the matter was appealed. While the state expressed the concern that there was little security due to the out of state residency of the members of this mining partnership, in our view the court's action was not "by reason of the fact" that appellants were non-residents but rather due to the court's attempt to achieve both the results contemplated by the act and compliance with its own orders. The prohibition of I.R.C.P. 54(d)(4) is inapplicable to the instant situation.