## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 42719/43007

| | | |
|---|---|---|
| ROBERT WOLFORD, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| v. | ) | **Boise, November 2016 Term** |
| | ) | |
| SHAWN MONTEE and HEATHER | ) | **2016 Opinion No. 137** |
| MONTEE, husband and wife; SHAWN | ) | |
| MONTEE, INC., an Idaho corporation dba | ) | |
| SHAWN MONTEE TIMBER COMPANY; | ) | **Filed: November 23, 2016** |
| and ABCO WOOD RECYCLING, LLC., an | ) | |
| Idaho limited liability company, | ) | **Stephen W. Kenyon, Clerk** |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. John T. Mitchell, District Judge.

District court order granting summary judgment and order of contempt, <u>affirmed</u> in part, <u>vacated</u> and <u>remanded</u> in part.

Paul W. Daugharty, Coeur d'Alene, argued for appellants.

Witherspoon, Kelley, Coeur d'Alene, for respondent. Mark A. Ellingsen argued.

_____

BURDICK, Justice

Shawn and Heather Montee, Shawn Montee, Inc., and ABCO Wood Recycling, LLC (collectively "Appellants" and individually "Montee," "Montee, Inc.," and "ABCO") appeal, among other things, the Kootenai County District Court's grant of summary judgment in favor of Respondent, Robert Wolford (Wolford). Appellants argue the district court erred in ruling that certain promissory notes (Notes) granted to Wolford by Appellants were clear and unambiguous and that under the terms of those notes Appellants were in default and Wolford was entitled to judgment as a matter of law. Appellants also state that several of their motions were erroneously denied, including a motion to continue, a motion for examination of Wolford, a motion to amend or alter judgment, and various motions to quash. Additionally, Appellants appeal the district court's order of contempt entered against them. We affirm in part and vacate and remand in part.

1

# I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 12, 2009, Montee executed a handwritten promissory note (2009 Note). That note, executed by Montee personally, provides as follows:

> May 12th, 09
>
> <u>Promise to Pay</u>
>
> I Shawn T. Montee agree to pay Bobby Wolford the sum of <u>$1.153mm dollars</u> I owe him for a number of fragmented loans too [sic] me. In addition I agree to pay him <u>$250k</u> for a 90 day extenion [sic] all due & payable by July 31st 09. This loan will be paid back by sale of the Tea Cup River Ranch ($4.8mm) or by the funds the U.S. Forest Service ($3.9mm) owes Shawn Montee Timber Co.
>
> /s/<u>Shawn Montee  5/12/09</u>

On February 16, 2010, a second promissory note was executed by Montee in favor of Wolford, which, unlike the first, was executed on behalf of Montee's companies, Montee, Inc. and ABCO (2010 Note). That note provides in pertinent part:

> Promise to Pay. Shawn Montee, Inc. &/or Abco Wood Recycling, LLC (Borrower) promises to pay the 10% monthly interest on the above principle [sic] balance (starting January 2010) to Bobby Wolford (Lender), in lawful money of the United State[s] of America.
>
> Payment Plan: TBD (between Shawn Montee & Bobby Wolford).

On June 11, 2014, Wolford filed a "Complaint for Money Due" alleging that the Notes were in default and requesting judgment for the amounts due and owing. Appellants disputed the intent of the parties in drafting the Notes; however, they admitted the existence of the Notes and did not deny that the Notes were in default. On August 15, 2014, Wolford moved for summary judgment. Appellants filed a motion to continue the motion for summary judgment on September 2, 2014.

Oral argument was held on September 17, 2014. At oral argument, the district court denied the motion to continue. On September 19, 2014, the district court issued its memorandum decision and order, granting Wolford's motion for summary judgment. The district court then entered two judgments. The first judgment, based on the 2009 Note, was entered against "Shawn Montee and the marital community comprised of Shawn Montee and Heather Montee, husband and wife," in the amount of $2,321,037.71. The second judgment, based on the 2010 Note, was entered against "Shawn Montee, Inc., an Idaho corporation d/b/a Shawn Montee Timber Company and Abco Wood Recycling, LLC, an Idaho limited liability company, jointly and severally" in the amount of $2,161,464.91.

2

Appellants filed various motions, including a motion to prohibit issuance of writs of execution and an emergency motion to quash writs of execution, which were denied by the district court. Thereafter, Wolford's writs of execution against Shawn and Heather Montee and Montee, Inc. and ABCO were returned unsatisfied. The court then entered an order of examination of judgment debtors, Shawn and Heather Montee. Appellants moved to quash that order, and the district court denied their motion. Shawn and Heather Montee did not produce the specified documents or appear for questioning as required in the order of examination. Based on their failure to comply with the examination order, the district court entered an order of contempt against Shawn and Heather Montee. Citing concern that Montee was avoiding payment on the judgment by fraudulently transferring assets to recently created out-of-state businesses, Wolford requested an injunction to prevent Montee from creating more out-of-state business entities and from transferring assets. The court granted the injunction. Appellants timely appeal.

## II. ANALYSIS

### A. Whether the district court erred in granting summary judgment to Wolford.

Appellants contend the district court erred in granting summary judgment because the Notes were not clear and unambiguous and that there were genuine issues of fact regarding the nature of the Notes, specifically whether the 2009 Note was a condition contract and whether the 2010 Note was intended to replace the 2009 Note. Further, Appellants argue that neither the 2009 Note nor the 2010 Note was in default and the district court erred in concluding otherwise. Finally, Appellants assert that the district court erred in failing to provide an offset against the Notes' amounts based on various items Montee delivered to Wolford.[1]

We find the district court was correct in determining that the 2009 Note was clear and unambiguous. However, we find the district court erred in its determination that the 2010 Note was clear and unambiguous. Accordingly, we affirm summary judgment based on the 2009 Note but vacate and remand summary judgment on the 2010 Note.

1. The motion to continue summary judgment.

As an initial matter, Appellants argue the district court erroneously denied their motion to continue summary judgment. This argument fails.

---

[1] Appellants also suggest the Notes are invalid because they lacked consideration. However, this argument was not raised by Appellants in the court below and is thus deemed waived. *Gordon v. Hedrick*, 159 Idaho 604, 612, 364 P.3d 951, 959 (2015) ("The longstanding rule of this Court is that we will not consider issues that are raised for the first time on appeal."(quoting *Row v. State*, 135 Idaho 573, 580, 21 P.3d 895, 902 (2001)).

"The decision to grant or deny a Rule 56(f) continuance is within the sound discretion of the trial court." *Taylor v. AIA Servs. Corp.*, 151 Idaho 552, 572, 261 P.3d 829, 849 (2011). When seeking a continuance under Rule 56(f), the moving party must "affirmatively demonstrate[] why he cannot respond to a movant's affidavits . . . and how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact. " *Jenkins v. Boise Cascade Corp.*, 141 Idaho 233, 239, 108 P.3d 380, 386 (2005). "The movant 'has the burden of setting out what further discovery would reveal that is essential to justify their opposition, making clear what information is sought and how it would preclude summary judgment.' " *Boise Mode, LLC v. Donahoe Pace & Partners Ltd.*, 154 Idaho 99, 104, 294 P.3d 1111, 1116 (2013) (quoting *Jenkins*, 141 Idaho at 239, 108 P.3d at 386).

Here, the district court noted the grant of a continuance was within its discretion. Next, the district court, citing *Jenkins*, properly noted the applicable law requiring the movant for continuance set forth by affidavit "what additional discovery is necessary and why such discovery is pertinent to rebut the pending motion for summary judgment." The court then reviewed the affidavit submitted with the motion and concluded that the affidavit failed "to state specific facts demonstrating *why* the depositions of Robert Wolford and Nellie Jacobsen are needed to respond to Wolford's motion for summary judgment, and fails to set forth *how* such evidence would be *relevant* to summary judgment." Thus, because counsel's affidavit failed to meet the applicable legal standard for granting a motion to continue, the district court denied the motion.

After reviewing the affidavit attached to the motion, we find the district court is correct. There is simply no mention as to what the depositions of Wolford or Jacobsen would reveal, let alone how information from those depositions would preclude summary judgment. Accordingly, we affirm the district court's decision to deny the motion to continue. *See Boise Mode*, 154 Idaho at 104, 294 P.3d at 1116; *Jenkins*, 141 Idaho at 239, 108 P.3d at 386.

2. The motion for summary judgment.

This Court exercises free review over appeals from a district court's grant of summary judgment and applies the same standard the district court used in ruling on the motion. *Taylor v. McNichols*, 149 Idaho 826, 832, 243 P.3d 642, 648 (2010). Under that standard, summary judgment is proper if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

4

party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). "If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Cristo Viene Pentecostal Church v. Paz*, 144 Idaho 304, 307, 160 P.3d 743, 746 (2007). This Court will "construe the record in the light most favorable to the party opposing the motion, drawing all reasonable inferences in that party's favor." *Jenkins*, 141 Idaho at 238, 108 P.3d at 385. However, "the adverse party may not rest upon mere allegations in the pleadings, but must set forth by affidavit specific facts showing there is a genuine issue for trial." *Rhodehouse v. Stutts*, 125 Idaho 208, 211, 868 P.2d 1224, 1227 (1994).

When an action will be tried without a jury, the trial court "is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Resolution of conflicting inferences is "within the responsibilities of the fact finder." *Id.* "This Court exercises free review over the entire record that was before the district judge to determine whether either side was entitled to judgment as a matter of law and reviews the inferences drawn by the district judge to determine whether the record reasonably supports those inferences." *Id.*

Here, the district court was asked to enforce the 2009 and 2010 Notes. "This Court's primary objective when interpreting a contract is to discover the mutual intent of the parties at the time the contract is made. The parties' intent should be ascertained from the contract's language." *Hap Taylor & Sons, Inc. v. Summerwind Partners, LLC*, 157 Idaho 600, 610, 338 P.3d 1204, 1214 (2014). "In the absence of ambiguity, the document must be construed in its plain, ordinary and proper sense, according to the meaning derived from the plain wording of the instrument. If the terms of a contract are clear and unambiguous, the interpretation of their meaning and legal effect are questions of law." *Liberty Bankers Life Ins. Co. v. Witherspoon, Kelley, Davenport & Toole, P.S.*, 159 Idaho 679, 689, 365 P.3d 1033, 1043 (2016) (citations and quotation marks omitted). Finally, "[u]nder the parol evidence rule, if the written agreement is complete on its face and unambiguous, no fraud or mistake being alleged, extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract." *Lindberg v. Roseth*, 137 Idaho 222, 228, 46 P.3d 518, 524 (2002). Appellants do not contend they were fraudulently induced into entering into the 2009 or 2010 Notes. Nor do Appellants argue there is a mistake in the Notes. Indeed,

Montee states he, not Wolford, requested the 2009 Note "to document the amounts [Wolford] had previously deposited." Thus, the only questions are whether the Notes were complete on their face and, if so, what the Notes legally require from the parties involved. *Seeid.*

Appellants initially argue there is actually only one Note at issue because the 2010 Note extinguished and replaced the 2009 Note. However, "[t]he making of a new contract does not necessarily abrogate a former contract unless it explicitly rescinds it, deals with the subject matter so comprehensively as to be complete in itself, or is so inconsistent with the first contract that the two cannot stand together." *Opportunity, LLC v. Ossewarde*, 136 Idaho 602, 607, 38 P.3d 1258, 1263 (2002).

Here, the 2010 Note makes no mention whatsoever of the 2009 Note, let alone provide an explicit rescission of the 2009 Note. Furthermore, the Notes deal with different parties. The 2009 Note was between Montee, personally, and Wolford. The 2010 Note is between Montee, Inc. and ABCO and Wolford. Finally, the two Notes deal with separate subject matter. The 2009 Note obligates Montee to personally repay $1.153 million plus $250,000. In contrast, the 2010 Note only obligates Montee, Inc. and ABCO to pay interest on the principal amount of $ 1,283,641. Thus, on its face, there is no basis to conclude that the 2010 Note replaced or rescinded the 2009 Note, and we decline to so hold. Rather, we find the 2009 Note was one agreement between Montee, personally, and Wolford; and the 2010 Note was another separate agreement between Montee, Inc. and ABCO and Wolford. Accordingly, we address each Note separately.

a. The 2009 Note

The 2009 Note states in pertinent part: "I [Montee] agree to pay [Wolford] the sum of $1.153 mm dollars . . . I agree to pay him $250K for a 90 day extention [sic] all due + payable by July 31st 09." Based on the plain language, the note clearly states that Montee is personally obligated to pay Wolford $1.153 million plus $250,000 by July 31, 2009. The only claimed defect is the lack of a stated interest rate. However, there is no requirement that a note include interest. Thus, the 2009 Note is complete on its face. It provides the identity of the lender (Wolford), and the borrower (Montee), the amounts owed ($1.153 million + $250,000), the date by which payment must be made (July 31, 2009), and the interest rate (12%) is provided by way of Idaho Code section 28-22-104(1).

Appellants' argument that the 2009 Note is a conditional contract is unavailing. The language in the 2009 Note, while mentioning the sale of the Tea Cup River Ranch and funds

6

owed by the U.S. Forest Service, does not condition payment of the loan on either of these events actually occurring. [2] Absent any words directing that repayment is conditioned on the sale of the Tea Cup River Ranch or the receipt of the U.S. Forest Service funds, the plain language of the 2009 Note simply indicates that the Ranch and Forest Service funds are mentioned as possible sources of capital for paying back the amount due. Such identification of capital does not negate the plain language obligating Montee to repay the loan. Thus, the district court did not err in determining that the 2009 Note was clear on its face. [3]

After determining the 2009 Note was clear on its face and that Montee was personally liable for the Note, the district court then determined the Note was in default. Appellants argue this finding was erroneous because repayment of 2009 Note was conditioned on the sale of the Tea Cup River Ranch or settlement funds from the U.S. Forest Service. Thus, since neither of these events occurred, Appellants' argue the 2009 Note was not in default.

This argument is without merit. As discussed above, the plain language of the 2009 Note does not condition repayment on the sale of the ranch or the receipt of the Forest Service funds. The 2009 Note does, however, clearly indicate that payment of the $1.153 million and the $250,000 are "all due & payable by July 31st 09." Moreover, Montee presents no evidence that the outstanding amounts were paid, and does not dispute Wolford's statement that Montee failed to pay "the balance due and owing . . . by the July 31, 2009, deadline." The district court was correct in determining that the 2009 Note was in default.

Finally, Appellants assert that the district court erred in not providing an offset against the amount due under the 2009 Note because Montee stated in his affidavit that he had delivered certain items to Wolford. [4] However, in his affidavit Montee does not assert that these items were provided as payment on either of the Notes. Rather, Montee states he "delivered" "signed" and "gave" these items to Wolford "consistent with the relationship we had and how we tried to help each other out when needed." Consequently, there is no factual basis for the assertion that these

---

[2] The language in the 2009 Note provides: "This loan will be paid back by sale of the Tea Cup River Ranch ($4.8 mm) or by the funds the U.S. Forest Services ($3.9 mm) owes Shawn Montee Timber Co."

[3] Having determined that the 2009 Note was clear on its face, Montee's assertion in his affidavit that it was never the intent of the parties that the loan be repaid or that he be personally liable for the amounts is immaterial. *Lindberg*, 137 Idaho at 228, 46 P.3d at 524 ("[I]f the written agreement is complete on its face . . . extrinsic evidence of prior contemporaneous negotiations or conversations is not admissible to contradict, vary, alter, add to or detract from the terms of the written contract.").

[4] The items are a "2005 Custom Harley Davidson," valued at $40,000; "two chip van trailers" valued at $20,000 each; the use of a "Krause Sorting/Picking Belt Station valued at $300,000; and a "commercial water pump mounted on a large trailer."

items were given as payment on either of the Notes. Furthermore, Appellants do not cite any legal support for the assertion that an offset was required. Accordingly, we hold the district court did not err in denying an offset for these items. *JBM, LLC v. Cintorino*, 159 Idaho 772, 775, 367 P.3d 167, 170 (2016) ("This Court 'will not consider an issue not supported by argument and authority in the opening brief.' " (quoting *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010))).

In summary, because the 2009 Note is clear and unambiguous on its face, was in default, and an offset was not required, we affirm the district court's grant of summary judgment as to the 2009 Note.

b.  The 2010 Note

The 2010 Note in its entirety is as follows:

**PROMISSSORY NOTE**

**Date:** 2/16/2010       **Princip[al]:** 1,283,641 w/penalty       **Interest:** 10%

| **Borrower:** | Shawn Montee, Inc. & Abco Wood Recycling, LLC PO Box 1329 Post Falls, ID 83877 | **Lender:** | Bobby Wolford 22014 W. Bostien Rd. Woodinville, WA 98072 |
|---|---|---|---|

**Promise To Pay.** Shawn Montee, Inc. &/or Abco Wood Recycling, LLC (Borrower) promises to pay the 10% monthly interest on the above principle [sic] balance (starting January 2010) to Bobby Wolford (Lender), in lawful money of the United State[s] of America,

**Payment Plan: TBD** (between Shawn Montee & Bobby Wolford).

**Borrower:**  /s/ Shawn Montee       **Lender:** _____ .
Shawn Montee                                            Bobby Wolford
Shawn Montee, Inc. &
Abco Wood Recycling, LLC

The district court determined that the 2010 Note, like the 2009 Note, was "similarly clear and unambiguous," and found that the note obligated "Shawn Montee, Inc. and Abco Wood Recycling, LLC to pay Bobby Wolford $1,283,641 plus 10% monthly interest beginning January 2010." After reviewing the 2010 Note, we hold the district court erred in ruling that the 2010 Note was clear and unambiguous on its face.

The district court concluded that Montee, Inc. and ABCO are liable for the principal amount of $1,283,641 plus 10% percent interest. However, the 2010 Note clearly states Montee, Inc. and ABCO "promise to pay the 10% monthly interest on the above princip[al] balance . . . ."

8

Nowhere in the Note does it say Montee, Inc. and ABCO promise to pay "the above principal." Rather, the clear language indicates that Montee, Inc. and ABCO are only promising to pay the "interest on the above princip[al]," not the principal itself.

Additionally, there is no specified date as to when such interest payments must be made. Indeed, the Note clearly leaves the payment terms open stating "Payment Plan: TBD (between Shawn Montee & Bobby Wolford)." In an attempt to circumvent this fact, Wolford argues that the language of the Note clearly indicates that the payments should be made monthly:

> [The 2010 Note] required . . . at a minimum, the 10 percent monthly interest on the principal balance of [the 2010 Note] starting January 2010. It is an undisputed fact that Montee Inc. and Abco failed to make this minimum monthly payment to Wolford.

However, the language is not so clear. While it is true that the Note states Montee, Inc. and ABCO "promise to pay the 10% monthly interest on the above princip[al] balance (starting January 2010)," it is unclear whether this means payment will be made monthly starting in January 2010, or whether interest will simply begin accruing at monthly intervals starting in January 2010. In addressing this issue, the district court summarily states: "There is no genuine issue of material fact that [Montee, Inc. and ABCO] . . . agreed to begin making payments in January 2010." However, the document is dated February 16, 2010; thus, if payment was due monthly starting in January 2010, the Note would have been in default when it was written. This, and given the clear language of the Note stating the payment terms would be determined later, create an ambiguity about the payment terms of the 2010 Note. Furthermore, although the 2010 Note clearly indicates that the interest will be ten percent, it fails to indicate whether the interest accrues monthly or per annum. Thus, the district court erred in concluding that the 2010 Note was clear on its face, and the district court should have considered parol evidence to determine the intent of the parties with regard to when the interest was to start running, whether the interest would accrue monthly or per annum, and when payments were due. *Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 266, 297 P.3d 222, 229 (2012) ("We hold the [contract] is ambiguous and the district court therefore erred by excluding parol evidence of intent."); *In Re Estate of Kirk*, 127 Idaho 817, 824, 907 P.2d 794, 801 (1995) ("Parol evidence may be considered to aid a trial court in determining the intent of the drafter of a document if an ambiguity exists.").

In conclusion, we affirm the district court's summary judgment on the 2009 Note, but vacate summary judgment on the 2010 Note and remand for the district court to determine the

9

payment terms of the 2010 Note, specifically, when interest payments were due, when interest was to begin accruing, and whether the interest rate was per month or per annum.

**B. Whether the district court erred in entering multiple judgments.**

The district court entered one judgment against Montee individually for $2,305,160.71 and entered another judgment against Montee, Inc. and ABCO for $2,145,589.91. Appellants contend the district court erred in entering these judgments. According to Appellants, the two judgments were erroneous because (1) they did not comply with the strict requirements of Idaho Rule of Civil Procedure 54(a); and (2) the judgments resulted in a double recovery for Wolford.

As to the Rule 54(a) argument, both judgments were entered on September 26, 2014, and clearly stated that they were meant to be final judgments. On April 15, 2015 this Court entered an order stating that all judgments entered before April 15, 2015, that did not comply with the form required by I.R.C.P. 54(a) but were intended to be final judgments would be treated as such. This argument is without merit.

However, the judgment for the 2010 Note incorrectly includes "the principal sum of $1,483,641.00." As noted earlier, the 2010 Note expressly states Montee, Inc. and ABCO only promised to pay the interest on the principal. There is no promise to pay the principal in the 2010 Note. Thus, the inclusion of principal in the judgment for the 2010 Note resulted in a double recovery for Wolford. The judgment for the 2010 Note should not include any amount for the principal in its calculation but rather should be limited only to the interest amount as determined by the district court on remand.

**C. Whether the district court erred in granting a TRO and a subsequent injunction against Appellants.**

Appellants argue the court erred in granting a temporary restraining order (TRO) and a subsequent injunction. Specifically, Appellants argue the TRO was issued in error because it was done without notice and without the issuance of a bond. Appellants further contend the injunction was erroneously issued because injunctions may not issue after a final judgment has been entered. We disagree.

1. The TRO

The district court issued a TRO under Idaho Rule of Civil Procedure 65(b). We have stated that TROs issued under I.R.C.P. 65(b) are unappealable. *Wood v. Wood*, 96 Idaho 100, 101, 524 P.2d 1072, 1073 (1974) ("The appellate process is not geared to handle orders of such a

temporary nature, for by the time an appeal could normally be effected, the order would have expired by its own terms. Therefore, the appeal is dismissed.").

2. The injunction

Appellants argue the injunction was improperly granted because injunctions can only be granted prior to the entry of a final judgment. In support of this argument, Appellants point to two Idaho cases: *Farm Serv., Inc. v. U. S. Steel Corp.*, 90 Idaho 570, 414 P.2d 898 (1966); *Idaho Gold Dredging Corp. v. Boise Payette Lumber Co.*, 60 Idaho 127, 90 P.2d 688 (1939) and two federal cases: *McCormack v. Hiedeman*, 694 F.3d 1004 (9th Cir. 2012); *U.S. Philips Corp. v. KBC Bank N.V.*, 590 F.3d 1091, 1094 (9th Cir. 2010).

Specifically, Appellants cite *Farm Serv., Inc.*, for the proposition that "a preliminary injunction to preserve the property in status quo pending final judgment is proper . . . ." and that "such an injunction can be granted only after a full hearing and a showing of a clear right thereto." 90 Idaho at 587, 414 P.2d at 907. The reference to the *Idaho Gold* case is only a "see also" citation without pincites that follows the quoted material from *Farm Serv. Inc.* The citations to the two federal cases are given for the proposition that the "purpose of a preliminary injunction is to preserve the status quo between the parties pending the resolution of a case on the merits." *McCormack*, 694 F.3d at 1019 (citing *U.S. Philips Corp.*, 590 F.3d at 1094). All of these cases involved actions where the injunction was issued before an adjudication of the case on the merits. In such cases, Appellants are correct—the injunction serves to maintain the status quo until judgment, and thus upon entry of judgment the injunction, having served its purpose, dissolves.

In this case, however, the purpose of the injunction was to prevent Appellants from engaging in activities that would "render the judgment ineffectual." Such a reason is specifically provided for under Idaho Rule of Civil Procedure 65(e)(3): "When it appears during the litigation that the defendant is doing, or threatens, or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the subject of the action, and tending *to render the judgment ineffectual*." (emphasis added).[5] Such language, as the district court noted, presupposes a judgment and makes clear that post-judgment injunctions can be asked for and

---

[5] All references to I.R.C.P. are from the 2014 Rules, which were in effect at the time the action was filed. The new 2016 Rules do not have the same wording.

granted. Thus, under the language of Rule 65(e)(3), the district court did not err in issuing an injunction post-judgment.

As an additional note, while this direct issue has not been dealt with in Idaho, a similar situation appears in *State ex rel. Evans v. Click*, 102 Idaho 443, 631 P.2d 614 (1981). In that case, the district court attached a post-judgment "lien" on the appellants' machinery to ensure that appellants complied with the court's order. *Id.* at 449–50, 631 P.2d at 620–21. In upholding the district court's imposition of the post-judgment "lien," we looked to Idaho Code section 1-1603:

> While the district court may have confused the issue here by the manner in which it imposed and the way it characterized the "lien" . . . it is our conclusion that such action was within the inherent power of the court to insure compliance with not only the intent of the statute but also its own related orders.

*Id.* at 450, 631 P.2d at 621 (citing I.C. § 1-1603). We then also recognized that since the matter had been appealed the "lien" could be upheld under Idaho Rule of Civil Procedure 62(c), which "grants the court power to grant, suspend or modify an injunction during the pendency of an appeal upon imposition of sufficient security through bonds or other means to preserve the subject matter of the litigation and the rights of the parties." *Id.*

Accordingly, because at the time the injunction was issued Rule 65(e)(3) contemplated the grant of an injunction post-judgment and because Idaho Code section 1-1603 and Rule 62(c) also grant the district court authority to issue a post-judgment injunction of this nature, we affirm the district court's grant of an injunction.

## D. Whether the district court erred in other various orders and rulings.

Appellants raise various other issues on appeal regarding multiple rulings and orders issued by the district court. Among these issues, Appellants assert that the district court erred in denying their motion to quash the order for examination of judgment debtors and in holding Shawn and Heather Montee in contempt.

In the argument section of their brief, Appellants state:

> [T]he District Court clearly exceeded the statutory authority set forth in Idaho Code §§ 11-501 and 11-502. The Order of Examination of Judgment Debtors was void. As such, the denial of the Motion to Quash Order for Examination of Judgment Debtors and subsequent finding of contempt was clearly erroneous and an abuse of discretion.

12

Directly preceding this conclusion, Appellants provide one paragraph of argument in support of their position in which they state, "a Motion to Quash was filed setting forth in detail how the District Court exceeded the statutory authority." They then provide citations to two cases. However, Appellants do not expound on what is contained in the "Motion to Quash" and fail to provide any citation to the record as to where the "Motion to Quash" might be found. *VanderWal v. Albar, Inc.*, 154 Idaho 816, 821, 303 P.3d 175, 180 (2013) ("An appellant must support assignments of error with citations to the parts of the transcript or record relied upon." (citing I.A.R. 35(a)(6)). Appellants also fail to articulate how the cases they cite support their conclusion. *Bettwieser v. N.Y. Irrigation Dist.*, 154 Idaho 317, 328, 297 P.3d 1134, 1145 (2013) (noting that claims of error are waived when Appellant fails to support citations with argument related to the relevance or application of the citations). Thus, we decline to address this issue. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("Where an appellant fails to assert his assignments of error with particularity and to support his position with sufficient authority, those assignments of error are too indefinite to be heard by the Court. A general attack on the findings and conclusions of the district court, without specific reference to evidentiary or legal errors, is insufficient to preserve an issue. This Court will not search the record on appeal for error." (citations omitted)).

The remaining issues brought by Appellants largely restate the district court's rulings and assert that the district court erred in so ruling. Summary attacks on the district court's findings and rulings are insufficient to preserve an issue for appeal. *Id.* As such, these issues will not be addressed by the Court.

**F. Whether the district court properly granted Wolford attorney fees.**

The district court awarded attorney fees to Wolford, as the prevailing party, under Idaho Code section 12-120(3). Because we affirm summary judgment on the 2009 Note, the district court's award of fees against Montee is affirmed. *Intermountain Forest Mgmt., Inc. v. La. Pac. Corp.*, 136 Idaho 233, 238, 31 P.3d 921, 926 (2001) (upholding fees where district court's grant of summary judgment was upheld on appeal). However, because the district court erred in granting summary judgment on the 2010 Note, Wolford is no longer the prevailing party as to Montee, Inc. and ABCO. Thus, we vacate the district court's award of attorney fees against Montee, Inc. and ABCO and remand for a determination of the prevailing party following the district court's determination regarding the payment terms of the 2010 Note. *Sacred Heart Med.*

13

*Ctr. v. Nez Perce Cty.*, 136 Idaho 448, 451, 35 P.3d 265, 268 (2001) (vacating award of attorney fees where summary judgment was vacated on appeal).

**G. Attorney fees on Appeal.**

Appellants request attorney fees under Idaho Code section 12-120(3). Wolford does not request fees on appeal. Under section 12-120(3), attorney fees are allowable to the prevailing party "in any action to recover on an open account [or] note." I.C. 12-120(3). Because we affirm summary judgment on the 2009 Note, Montee has not prevailed on appeal. However, because we reverse summary judgment on the 2010 Note, the identity of the prevailing party as to the 2010 Note will not be known until the district court makes its determination regarding the payment terms of the 2010 Note. *See Steel Farms, Inc. v. Croft & Reed, Inc.*, 154 Idaho 259, 269, 297 P.3d 222, 232 (2012) (citing I.R.C.P. 54(d)(1); *Bagley v. Thomason*, 149 Idaho 799, 804–05, 241 P.3d 972, 977–78 (2010)). Upon the district court's entry of a final judgment deciding the issue of the 2010 Note, the court is to determine whether Montee, Inc. and ABCO have prevailed and whether they are entitled to attorney fees related to this appeal. *Id.*

## B. CONCLUSION

We affirm summary judgment on the 2009 Note. However, we vacate summary judgment as to the 2010 Note and remand to the district court to determine when payments were due, when interest was to begin accruing, and whether the interest rate was per month or per annum. The district court's orders granting a TRO and injunction are affirmed, as well as its ongoing ability to monitor post-judgment proceedings on the 2009 Note. The district court's order granting fees against Montee, Inc. and ABCO is vacated. No costs or attorney fees at this time on appeal.

Chief Justice J. JONES and Justices EISMANN, W. JONES and HORTON, **CONCUR.**